143 N.J. Super. 571 (1976)
364 A.2d 27
STATE OF NEW JERSEY, PLAINTIFF,
v.
REGINALD BROWN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided August 5, 1976.
*572 Mr. Michael A. Gast for defendant (Messrs. Lefkowitz & Gast, attorneys).
Mr. Arthur G. Lash, Assistant Prosecutor for the State (Mr. C. Judson Hamlin, Prosecutor of Middlesex County, attorney).
BACHMAN, J.S.C.
Pursuant to R. 2:5-1, this opinion is to serve as amplification of this court's ruling on the issue of consent of the victim to the alleged atrocious assault and battery (N.J.S.A. 2A:90-1).
Specifically, defendant contends that he is not guilty of the alleged atrocious assault and battery because he and Mrs. Brown, the victim, had an understanding to the effect that if she consumed any alcoholic beverages (and/or became intoxicated), he would punish her by physically assaulting her. The testimony revealed that the victim was an alcoholic. On the day of the alleged crime she indulged in some spirits, apparently to Mr. Brown's dissatisfaction. As per their agreement, defendant sought to punish Mrs. Brown by severely beating her with his hands and other objects.
This court was able to find only two early cases in this state dealing with the consent defense in criminal assault cases: Cliver v. State, 45 N.J.L. 46 (Sup. Ct. 1883), and State v. Cooper, 22 N.J.L. 52 (Sup. Ct. 1849). Though they are somewhat inferentially and analogously enlightening, they are not entirely dispositive of the question of consent in this case, for they, like many cases (including those in this and other jurisdictions that have held consent to be *573 a defense in a prosecution for criminal assault) involve sexual assaults of one kind or another.
Some courts have allowed the defense of consent in civil suits, while denying it in criminal prosecutions for battery (e.g., Wright v. Starr, 42 Nev. 441, 179 P. 877 (Sup. Ct. 1919)). According to these courts, there are two different interests at stake. While criminal law is designed to protect the interests of society as a whole, the civil law is concerned with enforcing the rights of each individual within the society. So, while the consent of the victim may relieve defendant of liability in tort, this same consent has been held irrelevant in a criminal prosecution, where there is more at stake than a victim's rights. Love, "Criminal Law: Consent as a Defense to Criminal Battery  The Problem of Athletic Contests," 28 Okla. L. Rev. 840 (1975).
Because of the dearth of authority in New Jersey, it will be useful to examine the manner in which other jurisdictions have resolved the issue of consent to criminal assaults. Several of these courts have ruled on the issue of consent in criminal assault cases that did not have sexual overtones but did involve actual batteries. These courts have almost invariably taken the position that since the offense in question involved a breach of the public peace as well as an invasion of the victim's physical security, the victim's consent would not be recognized as a defense, especially where the battery is a substantial or severe one. Taylor v. State, 214 Md. 156, 133 A.2d 414, 65 A.L.R.2d 740 (Ct. App. 1957). See generally, 58 A.L.R.3d, Assault and Battery, § 2 at 662. It was very early held to be a crime to cut off the hand of a person at his request and with his full consent. Wright's Case (Leicester Assizes 1604), reported in Beale, Cases on Criminal Law (3d. 1915), 209. Professor Beale explained that
Homicide, mayhem and battery may be committed, though the individual injured consented to the injury. The reason for this is clear: The public has an interest in the personal safety of its citizens and is injured where the safety of any individual is threatened, whether *574 by himself or another. [Beale, "Consent in the Criminal Law," 8 Harv. L. Rev. 317, 324 (1895)]
Atrocious assault and battery is a crime in this State, as it is in others. As noted by the court in Martin v. Commonwealth, 184 Va. 1009, 37 S.E.2d 43 (Sup. Ct. App. 1946),
Invitations and consent to the perpetration of a crime do not constitute defenses * * *
If the doing of a particular act is a crime regardless of the consent of anyone, consent is obviously no excuse * * * The right to life and security is not only sacred in the estimation of the common law, but it is inalienable.
This was the governing law in Vermont as far back as 1884, where the court in State v. Burnham, 56 Vt. 445, 48 Am. Rep. 801 (Sup. Ct. 1884), held that defendant's consent to engage in assaultive conduct (sparring and boxing) constituting a breach of the peace was not determinative of the quality of the same in regard to guilt or innocence. The consent to acts prohibited by law (i.e., street boxing) does not give character to their acts and prevent their becoming a breach of the peace.
Such was the governing law in England as well. Regina v. Coney, 8 L.R. 534 (Q.B. 1882). There, Cave, J. went to great length to say that "an assault, being a breach of the peace, and unlawful, the consent of the person is immaterial." Stephen J. reiterated and expounded upon the rule in his concurring opinion:
* * * the consent of the person who sustains the injury is no defense, if the injury is of such a nature, or if it is inflicted under such circumstances, that its infliction is injurious to the public as well as to the person injured.
As recently as 1934 it was held in England that if an act is unlawful in the sense of it being in itself a criminal act, it is plain that it cannot be rendered lawful because the person to whose detriment it is done consents to it. No person can license another to commit a crime. Regina v. Donovan, 2 *575 K.B. 498, at 507, (1934). In accord, People ex rel. Burke v. Steinberg, 190 Misc. 413, 73 N.Y.S.2d 475 (Magis. Ct. 1947).
The reasoning and public interest that is of concern and served by this rule is that of peace, health and good order. An individual or victim cannot consent to a wrong that is committed against the public peace. The state, not the victim, punishes a person for fighting or inflicting assaults. As astutely noted in Wright v. Starr, supra, the court, citing with approval 1 Cooley, Torts, 283, "There are three parties involved in criminal assaults, one being the state, which for its own good does not suffer the others to deal on a basis of contract with the public." It has been stated, and perhaps rightly so, that the only true consent to a criminal act is that of the community. Hughes, "Criminal Law  Defense of Consent  Test to be Applied", 33 Can. B. Rev. 88 at 92 (1955).
This is so because these acts (the physical assaults, by defendant upon Mrs. Brown), even if done in private, have an inpingement (whether direct or indirect) upon the community at large in that the very doing of them may tend to encourage their repetition and so to undermine public morals.
State v. Fransua, 85 N.M. 173, 510 P.2d 106, 58 A.L.R. 3d 656 (App. 1973), bears further illustration and support for this court's holding, as it is a classic and recent case of an invitation and consent to an aggravated assault. There, as the result of an argument the victim, in compliance with the defendant's wishes, produced a loaded pistol, laid it within defendant's reach and said: there's the gun, if you want to shoot me go ahead. The defendant picked up the pistol and shot the victim, wounding him seriously. In response to the defendant's argument of consent on the part of the victim, the court very wisely opined,
We cannot agree. It is generally conceded that a state enacts criminal statutes making certain violent acts crimes for at least two reasons: One reason is to protect the persons of its citizens; the second, however, *576 is to prevent a breach of the peace [citing] State v. Seal, 76 N.M., 461, 415 P.2d 845 (1966). While we entertain little sympathy for either the victim's absurd actions or the defendant's equally unjustified act of pulling the trigger, we will not permit the defense of consent to be raised in such cases. Whether the victims of crimes have so little regard for their own safety as to request injury, the public has a stronger and overriding interest in preventing and prohibiting acts such as these. 510 P.2d at 107.
Also in accord is People v. Gray, 224 Cal. App.2d 76, 36 Cal. Rptr. 263 (D. Ct. App. 1964), where the court said flatly and without discussion that "it is no defense to assert that the victim consented to an assault upon her likely to produce great bodily harm." Nor is consent a justification for a physical beating when it is a matter that concerns the peace and dignity of the state. State v. Roby, 83 Vt. 121, 74 A. 638 (Sup. Ct. 1909); Banovitch v. Commonwealth, 196 Va. 210, 83 S.E. 2d 369 (Sup. Ct. App. 1964).
There are a few situations in which the consent of the victim (actual or implied) is a defense. These situations usually involve ordinary physical contact or blows incident to sports such as football, boxing, or wrestling. People v. Samuels, 250 Cal. App.2d 501, 58 Cal. Rptr. 439 (D. Ct. App. 1967), cert. den. sub nom. Samuels v. California, 390 U.S. 1024, 88 S.Ct. 1404, 20 L.Ed.2d 281. But this is expected and understood by the participants. The state cannot later be heard to charge a participant with criminal assault upon another participant if the injury complained of resulted from activity that is reasonably within the rules and purview of the sports activity.
However, this is not to be confused with sports activities that are not sanctioned by the state. Thus, street fighting which is disorderly and mischievous on many obvious grounds (even if for a purse and consented to), and encounters of that kind which tend to and have the specific objective of causing bodily harm, serve no useful purpose, but rather tend to breach the peace and thus are unlawful. Commonwealth v. Collberg, 119 Mass. 350 (Sup. Jud. Ct. 1876); Willey v. Carpenter, 64 Vt. 212, 23 A. 630 (1892). No one is justified *577 in striking another, except it be in self defense, and similarly whenever two persons go out to strike each other and do so, each is guilty of an assault. It is no matter who strikes the first blow, for the law proscribes such striking.
As stated by this court in its ruling and by the court in People v. Samuels, supra, it is a matter of common knowledge that a normal person in full possession of his or her mental faculties does not freely and seriously consent to the use upon his or herself of force likely to produce great bodily harm. Those persons that do freely consent to such force and bodily injury, no doubt, require the enforcement of the very laws that were enacted to protect them and other humans. A general principle of law is that a person cannot contract out of protective legislation passed for his other benefit. Day v. Davies, 2 K.B. 74 (C.A. 1938). "If an act be prohibited, it cannot be the subject of a valid contract." The laws of this State and others have dealt with the question are simply and unequivocally clear that the defense of consent cannot be available to a defendant charged with any type of physical assault that causes appreciable injury. See also, Commonwealth v. Farrell, 322 Mass. 606, 78 N.E.2d 697 (Sup. Jud. Ct. 1948); People v. Lenti, 44 Misc.2d 118, 253 N.Y.S.2d 9 (Co. Ct. 1964). If the law were otherwise, it would not be conducive to a peaceful, orderly and healthy society.
As noted above, the courts that have ruled on the issue of consent to physical assaults, have almost invariably denied this defense to defendants. State v. Beck, 19 S. Car. L. 363 (1833) and Vanvactor v. State, 113 Ind. 276, 15 N.E. 341 (Sup. Ct. 1888), are the only cases this court could find that represent the contrary view. Both of these cases involved corporal punishment of the victim by defendant, done at the request or acquiescence of the victim. In Vanvactor the victim accepted physical punishment to avoid expulsion from school. In Beck the victim contracted and accepted the battery as an alternative to being turned over to the police for a theft. Vanvactor is easily distinguishable as it resulted from a classroom situation in which a teacher attempted to punish *578 a student for disturbing the class by "in a kind and reasonable spirit, inflict[ing] corporal punishment upon a pupil for disobedience." The court held that a teacher may exact compliance with all reasonable rules and commands, and that there being nothing to show any intentional, undue severity, or improper motive on the part of the teacher, a conviction for assault and battery could not be had.
State v. Beck, however, cannot be squared with the authority herein. It represents a very minority view that is not followed today. There a conviction for assault and battery was reversed, the court saying that while under some circumstances a license to beat another would be valid, this would only be where the person receiving the license entertained a hostile disposition toward the other, and that defendant had no "evil disposition" toward the victim but acted at the victim's own earnest request to save him from what he considered a greater evil.
This view and reasoning cannot be sustained as it is no longer held by the courts in the United States. It not only is the only case this court could find with such anachronistic reasoning and twisted logic, but it is also the oldest case (excepting Wright's case, supra), on the question of consent to physical assaults. Commonwealth v. Collberg, supra, decided some 40 years after Beck expressly disagrees with its holding. And by necessary implication the other cases cited herein likewise disagree. "Evil or hostile disposition" is not an element of atrocious assault and battery or plain assault. The only necessary mens rea is intent, the existence of which is not contested in this case. Defendant in Banovitch v. Commonwealth, supra, certainly lacked a hostile or evil disposition or malice, but was denied the defense of consent to the charge of mayhem (atrocious assault and battery) on facts showing that he recklessly applied a corrosive chemical to the victim's person, in purporting to treat her for cancer. Nor did defendant in People v. Samuels, supra, entertain any malice when he administered a beating to another while making a sado-masochistic film. Yet the defense of consent *579 was unavailable to him. And certainly the court in Commonwealth v. Farrell, supra, did not require an evil or hostile disposition on the part of defendant in order to sustain a conviction for assault based on a sadistic burning with a cigarette. In fact, there was no evil or hostile disposition on the part of defendant. Defendant there simply had a crazy perverted notion of branding his female victim by burning his initials on the private parts of her body in order that she would be "his and she would never cheat on him." Similarly, defendants in People v. Lenti, supra, displayed or harbored no evil or hostile disposition but were merely administering and inflicting a so-called initiation punishment as a requirement for induction of pledgees (victims) into a fraternal organization. Nor did any other case that this court studied require malice or hostile or evil disposition, as it is not an element of the crime of criminal atrocious assault and battery.
This court concludes that as a matter of law, no one has the right to beat another even though that person may ask for it. Assault and battery cannot be consented to by a victim, for the State makes it unlawful and is not a party to any such agreement between the victim and perpetrator. To allow an otherwise criminal act to go unpunished because of the victim's consent would not only threaten the security of our society but also might tend to detract from the force of the moral principles underlying the criminal law. A major dissent to the view that the victim's consent may be a valid defense to a charge of assault has been voiced by the noted English jurist, Sir Patrick Devlin, who stated,
It is not a defense to any form of criminal assault that the victim thought his punishment well deserved and consented to it. To make a good defense the accused must prove that the law gave him the right to chastise and that he exercised it reasonably. There are certain standards of behavior or moral principles which society requires to be observed; and the breach of them is an offense not merely against the person who is injured, but against society as a whole. P. Devlin, The Enforcement of Morals, 6 (1965).
*580 Thus, for the reasons given, the state has an interest in protecting those persons who invite, consent to and permit others to assault and batter them. Not to enforce these laws which are geared to protect such people would seriously threaten the dignity, peace, health and security of our society.