STATE of Iowa, Appellee,

v.

Katherine L. SALLIS, Appellant.

No. 59795.

Supreme Court of Iowa.

Jan. 18, 1978.

Hugh P. Finerty, Jr., Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen., David E. Richter, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and McCORMICK, JJ.

MASON, Justice.

January 20, 1976, Katherine L. Sallis was arrested in Omaha, Nebraska, for the murder of her husband, Charles Sallis. Although the trial court docket entries did not originally reflect this fact, defendant was extradited to Iowa and arraigned March 16. She was tried and found guilty of the only charge submitted to the jury, first degree murder. She appeals from judgment imposed upon her conviction.

May 25 defense counsel filed a motion to dismiss the entire jury panel. This motion was in pertinent part as follows:

" * * * That at the time of the setting of the trial of this defendant herein, the defendant, by and through counsel, indicated to the Court and to the plaintiff's attorneys that there was a companion case also set for the same date at the same time, at which time counsel for the defendant suggested a serious conflict.

"Counsel for defendant now finds that a third companion case is presently in trial, which companion case has required the same witnesses and which companion case has required substantially the same evidence as that required in the defendant's case herein.

"That at the selection of the jury for the case now being heard, to wit: Lee Otis Marisett, a/k/a Charles O. Reese, on motion of the attorneys representing Marisett, motion was made that they be permitted to select their jury from the entire panel from both the North and South Court. That such motion was granted and the selection of said jury in said case was from the entire jury panel. That during the selection of said jury for the Marisett case now being heard, the entire panel was present during exhaustive and intensive Voir Dire examination by both the State of Iowa and the defendant. That such examination, extending over several hours, during which time the defenses of the various companion cases was [sic] alluded to by both the prosecution and the defendant, Marisett, and in particular to the defense of the defendant, Kathy L. Sallis.

"That the evidence produced by the State of Iowa in presenting their case in the Marisett trial now being heard, is in many respects identical to the evidence which may or may not be presented in the Sallis case. That such exposure by the entire panel to the evidence, to the testimony of the witnesses to be called in the Sallis matter, to the facts and circumstances surrounding this defendant's defense are prejudicial and will, in fact, deny this defendant a fair and impartial trial by jury as required by the Constitution of the United States and the Constitution of the State of Iowa.

"II

"In further support of this application, the defendant respectfully shows to the Court that no request was made after the selection of the jury in the Marisett case for sequestration of the jurors and that said jurors were permitted, while in recess to commingle in hallways, restaurants, etc. and that such exposure by the remaining balance of the present jury panel is further prejudicial to this defendant.

"That the plaintiff knew or should have known of the unfitness of the present panel in light of the above facts and that a new panel should have been selected.

"WHEREFORE, this defendant respectfully prays that the entire present jury panel be relieved from serving in this defendant's trial and that said jury panel be dismissed for cause and that a sufficient new panel of jurors be empaneled to sit in judgment of this defendant's trial. * * ."

At the hearing on this motion held May 26 counsel for Reese (Marisett) testified to the following:

"Q. Now, during the voir dire concerning the magnitude of this particular case, can you tell us how exhaustive or extensive your voir dire was? A. I questioned each prospective juror individually. I did not offer questions, except one or two questions—except one or two rather general questions to the entire panel. I attempted to determine the state of mind of each juror as an individual, and in so doing I used a guide or a list of items that I felt should be gone into.

"Q. In so doing did you allude in any way to other defendants in this case—co-defendants? A. They were all named.

"Q. Companion cases, they were all named? A. Yes.

"Q. And did you make any inquiry as to any of the jurors' knowledge of the particular defendants? A. I did.

"Q. And did you at any time allude to any specific charges against specific defendants during the course of this voir dire? A. I would have to state from memory. I believe it was indicated that the case was part of several companion cases. I don't think it went beyond that. * * *

"Q. During the course of your voir dire examination of prospective jurors did you allude to a certain contract—written contract? A. That was definitely referred to, yes.

" * * *

"A. There was reference made to a writing; I think that was the way we put it; or a note.

"Q. Commanding a murder to take place. A. Well, actually stated that way, I can't say.

" * * *

"Q. Very well, during the course of the trial, was there any mention made of any prior assault by defendant Kathy Sallis?

" * * *

"THE WITNESS: I believe not.

" * * *

"A. The name Sallis was mentioned, and I believe that Kathy Sallis was mentioned. I don't think it was mentioned in that context.

" * * *

"Q. During the—upon completion of the jury selection or voir dire examination and upon selection of the jury, what happened to the remaining panel—the remaining amount of the panel? A. They were simply dismissed and told to report at a later date.

" * * *

"Q. There was—was there any admonition given to the jurors who were not impanelled or selected to serve on your jury to the effect that they should remain out of the courtroom by virtue of the fact that they may be called for a companion case? A. There was no such admonition.

"Q. Was there an instruction that they should not go into your courtroom from that time on? A. No, sir.

" * * *

"MR. ALBRACHT: Did you make any independent observation to determine whether any of the other panel—any members of the jury panel not serving your case—were present in the courtroom?

"THE WITNESS: No. * * *

"CROSS EXAMINATION
"BY MR. RODENBURG:

"Q. Just one question, Mr. Kraschel. You have no independent knowledge of any commingling of jurors that might have affected the balance of the jury panel, except for the general voir dire of the combined jury panel north and south, is that correct? A. Well, I believe that would be correct, yes.

"Q. Well, there was no direct knowledge on your part of any conversations between the jurors in your case that had been selected and those remaining on the jury panel? A. I would have to say, no; because I was not in a position to make any observation. I was in the courtroom."

One other witness, the court reporter in the Marisett case, was called and testified no admonition was given the remaining members of the entire jury panel. He also testified to having no knowledge of any conversations among the jurors.

At the close of the hearing the court made the following statement:

"THE COURT: Well, the Court is satisfied that there hasn't been any commingling of the present jury serving in the case across the hall with the jurors remaining on the panel. And the motion to dismiss the panel is going to be overruled. We'll begin the selection of the jury."

Selection of the jury commenced at 10 a.m. May 26 and was completed at 4:15 p.m. The matter was then adjourned until May 28.

The morning of May 28 defense counsel renewed his motion for a mistrial on the ground the jury selected after the first hearing could no longer be fair and impartial. He based this contention on newspaper articles containing stories Reese had been found guilty and the other defendant had pled guilty. This motion was overruled by the court because defendant, in spite of the urging of her attorney that this publicity would prejudice the jury, decided to continue with the trial.

During the trial the prosecution asked many questions of a witness, Isaiah J. Jones, to which Mr. Jones was either not responsive or in answer launched into narrative statements. To these types of answers, defense counsel objected and the trial court sustained most of these objections. Two incidents of this type are called to our attention by defendant's appellate counsel. The first is as follows:

"MR. ALBRACHT: Your Honor, I'm going to object as leading and suggestive, and ask again that counsel be precluded from doing so; and at this time move for a mistrial. I'm placed in a position here to prejudice my own client by this constant objecting.

"THE COURT: Well, the objection is good, and let me say this, that when objec-

tions are made by counsel; they're not doing it with the intention of keeping things from you. They are attempting, I think, to assist the Court in admitting evidence that's proper. I think I should say that to the jury in view of the fact that you stated that you're prejudicing yourself, and I don't want your objections to be prejudicial to you and your client.

" * * *

"MR. ALBRACHT: Well, I object to any conversation this witness had with anyone outside the presence of this defendant.

"MR. RODENBURG: Now, just a minute, Your Honor. I object to this objection for the reason it's offered to prove the truth of what was asserted to prove it was asserted. That is not hearsay. It's part of a complicated matter.

"THE COURT: Well, I think he is being asked what he did, and I think he should confine his answer to that particular question.

"MR. RODENBURG: Would it be a fair statement, Mr. Jones, to say you made contact with Jackie Bell at or about 2:30 or the time you said?

"MR. ALBRACHT: Objected to as leading and suggestive. What counsel might think is fair is insignificant and immaterial in this matter.

"MR. RODENBURG: I'm trying to avoid the objections.

"MR. ALBRACHT: Your Honor, I'm being prejudiced. I dislike having to object. Counsel knows what is a proper question and what is improper, and I'm being placed at a terrible disadvantage. My client is absolutely being prejudiced. I again renew my motion for mistrial at this time. (This motion was never ruled upon by the court).

"THE COURT: I think I've explained it to the jury. Can you think of the question before you answer it and relate what you did or what you know.

"MR. RODENBURG: Would you avoid any reference to conversations with other persons, other than Mrs. Sallis until such time a question is asked of you?

"THE WITNESS: Yes, sir. I know.

"Q. Do you understand now? A. Right. Well, I went over to Mrs. Bell's house. Can I say what I told her?

"Q. No, sir."

The second incident which defense counsel calls to our attention was had out of the presence of the jury. This incident was as follows:

"THE COURT: And I think if you alert them to it, it will eliminate the danger of it slipping out.

"Let the record show that pursuant to the suggestion of defense counsel, the Court now advises the County Attorney to caution all witnesses to refrain from reciting any testimony as to any conversations that they had with anyone except the defendant.

"MR. RODENBURG: I want to make a statement to the Court on the record.

"It is my belief that Mr. Jones will take the stand and testify about conversations and about incidents which are involving this murder, and not directly necessarily conversations with this defendant. He will testify as to transactions which would be hearsay testimony. There is no way I can control him.

"MR. ALBRACHT: All I can do then is object at that point, Mr. Rodenburg; and, of course, would expect the Court to.

"MR. RODENBURG: Part of where I would object to the objection that he made; that is, I will not concede his objection, because I think it's good because of res ges'tae [sic] decision.

"MR. ALBRACHT: But you don't prove the res gestae by hearsay.

"MR. RODENBURG: You can't subject to the hearsay rule, but I cannot control this man, Your Honor. He's going to recite things I cannot control, and that's the only witness I will not account for.

"THE COURT: The only thing the Court can say, then, is you definitely admonish him; and I think he will understand perhaps, that any conversations he had with anyone other than the defendant must not be referred to.

" * * *

"MR. RODENBURG: * * * I am just having him tell the story, Your Honor. I don't know exactly how he's going to tell it."

At the conclusion of the evidence the court met in chambers with defense counsel, defendant and the prosecution and presented them with its proposed instructions. On the basis of defense counsel's prior viewing of the court's preliminary instructions, defense counsel made several objections to the proposed instructions. None of these objections were to the fact no instruction on second degree murder was to be submitted to the jury.

After defendant was found guilty, defense counsel filed a motion for new trial on several grounds. In this motion defense counsel did not object to the lack of an instruction on second degree murder. This motion was overruled. Later the court sentenced defendant to life imprisonment.

The following questions are presented for determination by defendant's appeal:

1. Was the preliminary examination of defendant held within statutorily prescribed time limits?

2. Did the trial court err in overruling defendant's motion to dismiss the entire jury panel for bias and prejudice?

3. Was the prosecutor guilty of misconduct such as would warrant the granting of a new trial?

4. Did the trial court err in failing to include an instruction on second degree murder?

I. Defendant contends she languished in an Iowa jail from February 2 to March 16, a total of 43 days. She maintains she was denied her right to a speedy preliminary examination under section 761.1, The Code, 1975.

In truth defendant languished in the Iowa jail in Council Bluffs for only a short time. Because of an oversight in the docket record, her attorney, appointed for this appeal, believed she had been extradited to Iowa on February 2. Actually she was not

brought to Iowa until March 16 and her preliminary examination was held on that same day.

After the State discovered the oversight in the docket record, it filed an application to correct this error under rule 10(d), Rules of Appellate Procedure, which provides in pertinent part as follows:

"If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation or the trial court, either before or after the record is transmitted to the Supreme Court, or the appropriate appellate court on proper suggestion or on its own initiative, may direct that the omission or misstatement be corrected * * *."

The State attached to this application the affidavit of Sergeant Harold Woolen, the person in charge of records at the Douglas County jail in Omaha, Nebraska. He stated Katherine L. Sallis came into his custody January 21 and remained there until March 16 when she was released to the Council Bluffs authorities. On the basis of this evidence, the trial court ordered the docket record changed to reflect the true situation.

■ On the basis of our examination of this evidence we find defendant's contention she was denied any right she may have had to a speedy preliminary examination is without merit.

II. Defendant does not argue with the manner in which the entire jury panel was selected. She maintains instead the panel was biased and prejudiced against her and, therefore, the court erred in failing to grant her motion to dismiss the entire panel. She contends the mere fact the jury could have commingled with the jurors involved in the trial of Charles O. Reese required the trial court herein to grant her motion. She argues the fact the jurors in her case were picked from those remaining after the Reese jury was picked resulted in prejudice

to her. She insists after the jury was selected there was so much publicity about the other defendants that her jury was thereby tainted. Defendant's contention is without merit.

The contention the commingling of jurors resulted in bias and prejudice was raised in the case of *State v. Staker,* 220 N.W.2d 613, 615–616 (Iowa 1974). There we disposed of the similar contention as follows:

"In criminal prosecutions a challenge to the entire panel is governed by the same law applicable in civil proceedings. * * * [citing authorities].

"* * *

"Rule 187(d) having the force and effect of a statute enumerates the matters upon which a challenge to the panel can be founded; the matters thus enumerated are exclusive and the bias or prejudice of the jurors is not among them.

"Even though bias or prejudice is established in regard to one or more particular jurors out of the panel such is not ground for challenge to the entire array. It appears to be well settled as a general proposition of law that a challenge to the array of jurors goes only to the form and manner of making up the jury panel without regard to the objections to the individual jurors who compose it and must, therefore, be based on some ground affecting the validity of the whole panel or array of jurors. Disqualification of an individual juror in a criminal case for any cause set forth in section 779.5, The Code, is not ground for challenge to the array but should be raised by challenging for cause the prejudiced jurors individually. * * * [citing authorities].

"Ordinarily, disqualification of individual jurors for expressions of opinions or for making remarks during selection of the jury indicating in some manner possible prejudice or bias against the accused or the occurrence of circumstances during that procedure from which such bias or prejudice might be implied does not constitute a sufficient ground for a challenge of the entire panel. * * * [citing authority]." See

also *State v. Dalgliesh,* 223 N.W.2d 627, 628 (Iowa 1974).

As noted, there was no evidence presented at the hearing on defendant's motion that any jurors commingled. There was no evidence presented that any juror was prejudiced or biased by pretrial incidents. We find no evidence of any prejudice or bias on the part of the jury based on pretrial events.

■ Defendant contends publicity during her trial about other defendants involved in her husband's killing tainted her jurors. At the hearing on her motion she presented no evidence of excessive publicity. She presented no evidence of any incident in which a juror was thereby prejudiced or biased. This contention is apparently based on the assertion that mere publicity automatically infects a jury. A similar contention was raised and disposed of in *Rizzo v. United States,* 304 F.2d 810, 815 (8 Cir. 1962), where the court stated:

"* * * The defendant Rizzo did not at trial or since make any showing or offer to make any showing that any of the members of the jury had read any of the newspaper accounts as to the case during the trial. His assignment of error is based upon the assumption that members of the jury disregarded the repeated admonitions of the trial judge against the reading of newspaper accounts of the trial.

"* * * Our jury system is based [on] the assumption that juries will endeavor to follow the Court's instructions. * * * [citing authority]. Where a jury has been clearly admonished not to read newspaper accounts of the trial in which they are serving as jurors, it is not to be presumed that they violated that admonition. * * [citing authority]. Where there is no showing that any of the jurors violated the admonition of the Court not to read newspaper accounts of the trial, it is not to be assumed that as a matter of human nature they did violate the admonition."

Later the *Rizzo* court, 304 F.2d at 816, set out the following pertinent remarks from *Irvin v. Dowd,* 366 U.S. 717, 722, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751:

" 'It is not required * * * that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' "

Later the *Rizzo,* court, 304 F.2d at 817, set out the proper time to determine if the jury was fair and impartial by quoting from *Blumenfield v. United States,* 284 F.2d 46, 51 (8 Cir. 1960), where the court stated:

" '* * * The ultimate question is whether it is possible to select a fair and impartial jury, and the proper occasion for such a determination is upon the *voir dire* examination. * * *.' " For a more recent holding approving of the *Irvin v. Dowd* holding, see *Murphy v. Florida,* 421 U.S. 794, 799–800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594.

This court made clear in *State v. Bigley,* 202 N.W.2d 56, 58 (Iowa 1972), a defendant has a right to raise the publicity issue during the course of trial. In *Bigley* the court stated:

"We believe Standard 3.5(f) contains workable guidelines which should be made prospectively applicable. We therefore adopt Standard 3.5(f), and Standard 3.4(b) insofar as it is incorporated by reference therein, as applicable in future trials."

Earlier in *Bigley,* 202 N.W.2d at 58, we had set out both A.B.A. Standards Relating to a Fair Trial and Free Press. We will not repeat those standards here.

Although the procedure provided in those standards was available, defendant did not use it. This weighs heavily against her as does the fact she presented no examples of such publicity and no testimony jurors were affected by any publicity. Her bare assertion is not sufficient to persuade us she was denied a fair trial because of publicity.

The fact the jury was picked from those prospective jurors remaining after the Reese panel was chosen does not alone justify a reversal here. Defendant presented no evidence prejudice resulted from this procedure.

Defendant's contention the jury was prejudiced or biased is without merit.

III. Defendant contends the prosecutor's misconduct in questioning a witness was so flagrant as to prejudice her and thereby deny her a fair trial. She maintains the record is replete with examples of such misconduct but contends because of space and time limitations she cannot set out other examples than those we set out previously. She insists the prosecutor's actions herein are best described by this court in State v. Carey, 165 N.W.2d 27, 32 (Iowa 1969), where it was stated:

"We cannot approve the conduct of the county attorney in his cross-examination of defendant. His avowed purpose was to put before the jury by insinuation and innuendo highly damaging facts which he admittedly had no way of properly presenting to them. * * *

"This is exactly what the county attorney hoped to accomplish, and he may well have done so, even though the court withdrew the evidence from consideration of the jury."

This court has laid out the guidelines for an examination of a contention such as that made by defendant. In State v. Webb, 244 N.W.2d 332, 333 (Iowa 1976), we stated:

"Prosecutors have a dual function. They must prosecute with vigor and diligence, and, at the same time, be alert to assure the defendant a fair trial. * * * [citing authority]. It is not always easy to strike a proper balance between the two. The duty to see the latter is protected without undue interference with the former rests originally in the sound discretion of the trial court. * * * [citing authorities].

"* * *

"Lawyers should avoid making statements before a jury which tend to prejudice a defendant's right to a fair trial. * * *.

"However, it is not a prosecutor's misconduct which entitles defendant to a new trial; it is the prejudice which results therefrom and which prevents the trial from being a fair one. * * * [citing authorities].

"Ordinarily a finding of prejudice results from persistent efforts to inject prejudicial matter before the jury. * * * [citing authorities]. Of course, prejudice may result from isolated prosecutorial misconduct, but we find it did not do so here." (Emphasis in original).

For similar comments see State v. Schmidt, 259 Iowa 972, 980–981, 145 N.W.2d 631, 636, cert. den., 386 U.S. 965, 87 S.Ct. 1046, 18 L.Ed.2d 115 and State v. Trudo, 253 N.W.2d 101, 106 (Iowa 1977).

The record discloses most of the arguments of counsel concern improper statements contained in the testimony of Isaiah J. Jones. Almost all of these arguments arose because Jones was either not responsive to the question put to him or he persisted in answering questions in the narrative form. Examples of the prosecutor's attempts to confine the witness to proper answers have been set out earlier in this opinion. We deem the prosecutor's questions on the whole were fair and correct. In our opinion the prosecutor was not guilty of making persistent efforts to inject prejudicial matter before the jury.

Defendant's contention there was prosecutorial misconduct is without merit.

The State contends this issue was not preserved for review because defendant's motion for mistrial was not ruled upon. The State supports its contention by analogy between the present situation and that occurring when an objection is made and not ruled upon.

When an objection to the admission of evidence is made and objecting counsel does not press the court for a ruling sustaining or overruling the objection, there is no error for review. Where a ruling on an objection is reserved and the trial court does not later rule sustaining or overruling the objection in a law action there is nothing for review because the objection is deemed waived. *Harper v. Cedar Rapids Television Co., Inc.,* 244 N.W.2d 782, 786 (Iowa 1976) and authorities cited.

Although the State's analogy is strong, we do not choose to decide this case on this basis for, as we have pointed out, defendant was not deprived of a fair trial because of any prosecutorial misconduct.

IV. The final question defendant seeks to present for consideration stems from the trial court's failure to instruct on second degree murder.

■ The problem is whether defendant preserved the alleged error for review since issues not raised in the trial court ordinarily cannot be effectively asserted on appeal. This rule applies when a defendant fails to preserve asserted error regarding the court's instructions. *State v. Smith,* 228 N.W.2d 111, 112 (Iowa 1975).

The transcript of the trial court proceedings discloses that on June 3, 1976, after both parties had rested, the court submitted to counsel a preliminary draft of instructions. June 4 the final draft of the instructions was submitted to counsel before arguments to the jury and opportunity was afforded both parties to make objections and take exceptions thereto. At that point defense counsel urged four objections to the instructions, none of which challenged the court's failure to instruct on second degree murder. Counsel did not take any exceptions to the court's failure to instruct on second degree murder at that time.

Following the jury verdict but before pronouncement of sentence defense counsel filed a motion for new trial. At no point in the 20 paragraphs of this motion was the question of the court's failure to instruct on second degree murder raised.

Counsel on appeal, who was not trial counsel, concedes this record but insists it was the trial court's duty to so instruct without the necessity of any request therefor.

■ It is the trial court's duty to instruct a jury fully and fairly, even without request, but our adversary system imposes the burden upon counsel to make a proper record to preserve error, if any, in this factual circumstance by specifically objecting to instructions in their final form, requesting instructions and voicing specific exception in event they are refused. *State v. Overmann,* 220 N.W.2d 914, 918 (Iowa 1974).

■ Defendant's failure to make known to the trial court before the instructions were given to the jury his wish to so instruct deprives him of a basis for successful appeal in this court for such failure to instruct. See *State v. Russell,* 245 Iowa 1190, 1205, 66 N.W.2d 35, 43.

The question of preservation of error arising from the trial court's instructions was discussed at length in *State v. Brown,* 172 N.W.2d 152, 156–160 (Iowa 1969). The decision supports the conclusion we reach here.

The following statement in *State v. Smith,* 228 N.W.2d at 112, is relevant:

"Our statutory duty to review the record in a criminal case without regard to technical errors or defects does not confer upon us either the duty or authority to treat the unexcused failure to make an otherwise mandatory record regarding the admissibility of evidence or the court's instructions as a mere technical error or defect. § 793.18, The Code; * * * [citing authorities]."

We have considered every contention urged by defendant on this appeal and we find none with merit.

The case is therefore

Affirmed.