**STATE of Iowa, Plaintiff-Appellee,**

v.

**Edward COLLIER,
Defendant-Appellant.**

No. 84–200.

Court of Appeals of Iowa.

May 28, 1985.

Kermit L. Dunahoo of Dunahoo Law Office, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Sherie Barnett, Asst. Atty. Gen., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ., but considered en banc.

DONIELSON, Presiding Judge.

Defendant appeals from his conviction and sentence in Polk County District Court for possession of a firearm by a felon and assault resulting in serious injury. On appeal, the defendant asserts that the trial court erred in refusing to instruct the jury on the defense of consent on the charges of assault. The defendant additionally asserts that the trial court erred in admitting into evidence two guns allegedly in defendant's possession where no chain of custody was demonstrated. We affirm.

The defendant, Edward "Tree" Collier, ran an outcall model business and employed Leanne Steele as a model. In August of 1982, Steele returned without any money after an all-day encounter with a customer with whom she "did" drugs. Defendant became upset and an argument ensued. According to Steele's testimony, defendant then asked that his calls be held, locked the doors, and told her "he was going to make sure [she] had a birthday [she] would remember and that [she would] probably never want to tell anyone about."

Collier forced Steele to remove her clothing and tied her spread-eagle face up on the bed. He then blindfolded her and proceeded to whip her with a belt. Steele testified that she was struck on the thighs, legs, and chest. When she began crying and begging him to stop, he slapped her across the face and gagged her. Defendant then performed sexual acts with her using various types of paraphernalia. He eventually untied her, beat her on her back side and proceeded to have intercourse with her anally. As a result of the beating and sexual acts, Steele suffered a swollen lip, large welts on her ankles, wrists, hips, buttocks, and severe bruises on her thighs.

At trial, Steele alleged that Collier had inflicted this severe beating to punish her for using drugs and returning from a customer without being paid. Steele asserted that after Collier had finished beating her, he went to the bathroom to think of something else to do. Steele then grabbed a gun which was kept in a nearby set of drawers, at which time the gun accidentally discharged. When Collier returned to see what had happened, Steele pointed the gun at Collier and shot at him. Steele subsequently ran to another room, followed by Collier who pointed another gun at her and said, "You really want to die now, don't you."

During the course of the trial, Steele identified two handguns as the guns kept by Collier in the chest of drawers in the bedroom. On cross-examination, Steele stated that she could not positively state that the guns offered by the State were not duplicates of the guns kept by Collier, but she did indicate that they were similar to those she had seen. On redirect the guns were admitted into evidence over defense counsel's objection that no proper foundation had been laid. Rebecca Stonehocker, a defense witness, later testified that the guns were hers and were kept in Collier's bedroom.

Defendant Collier testified that Steele requested him to tie her up to the bed and beat her in order to celebrate her birthday. Collier testified that Steele requested this to fulfill one of her sexual fantasies. Collier further testified that Steele had read

books concerning bondage and similar sadomasochistic conduct, and that she instructed him on the manner in which she was to be beaten. Collier additionally denied possession of a firearm on that day.

At the close of the evidence, the defense requested the following instruction:

The law provides there is no assault where the acts complained of resulted from a social activity not in itself criminal in which both parties are voluntary participants and such acts are a reasonably foreseeable incident of such activity and such acts do not create an unreasonable risk of serious injury or breach of the peace.

As to Assault With Bodily Injury, under Count I, and as to the lesser offense of Assault, you must find the defendant not guilty unless the State has proved by evidence beyond a reasonable doubt any one of the following elements:

1. The victim, Leanne Steele, was not a voluntary participant to the acts complained of; or

2. The acts complained of were not reasonably foreseeable; or

3. The acts complained of created an unreasonable risk of serious injury to Leanne Steele; or

4. The acts complained of were a breach of the peace.

If the State has proved any one or more of the elements by evidence beyond a reasonable doubt, then the acts complained of do constitute an assault. Otherwise, they do not.

The defense's theory was that this incident was a social activity within the meaning of Iowa Code section 708.1. The trial court refused to submit the instruction on the ground that the legislature did not intend the statutory defense of consent to an assault to include the conduct described during the trial. Collier was convicted, and now appeals that determination.

### I.

Defendant's first assignment of error is the trial court refused to instruct the jury on the defense of consent on the charge of assault with bodily injury which arose out of an incident of sadomasochism.

Iowa Code section 708.1 provides that a person commits an assault when, without justification, the person commits:

(1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

(2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

(3) Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

The defendant, however, contends that the sadomasochistic activity which occurred was a social activity includable within the following language of section 708.1:

Provided, that where the person doing any of the above enumerated acts, and such other person, *are voluntary participants in a sport, social or other activity, not in itself criminal, and such act is a reasonably foreseeable incident of such sport or activity, and does not create an unreasonable risk of serious injury or breach of the peace,* the act shall not be an assault. (emphasis added)

The defendant therefore contends sadomasochistic activity is not criminal, that Steele voluntarily participated in a "social activity" fully aware of the risks involved, and that therefore the jury should have been instructed on the defense of consent.

The question of whether sadomasochistic activity is includable as a "sport, social or other activity" within the meaning of section 708.1 has not heretofore been presented to the Iowa Supreme Court. Section 708.1 does not define the words "sport, social or other activity ...". Ordinarily, words used in a statute are to be given their ordinary meaning in the ab-

sence of persuasive reason to the contrary. *Welp v. Iowa Dep't of Revenue,* 333 N.W.2d 481, 483 (Iowa 1983). The interpretation of a statute is a judicial, not a legislative function. *Schwarzkopf v. Sac County Bd. of Sup'rs,* 341 N.W.2d 1, 6 (Iowa 1983). In interpreting statutes, our ultimate goal is to ascertain legislative intent, considering the spirit of the statute as well as the words themselves. *Emmetsburg Ready Mix Co. v. Norris,* 362 N.W.2d 498, 499 (Iowa 1985). A sensible, workable, practical, and logical construction should be given, avoiding inconvenience or absurdity. *Id.*

We have found no cases which directly consider the question of whether sadomasochism or other deviant sexual behavior is a "social or other activity" within the meaning of the statute. However, several other jurisdictions have discussed sadomasochism and other violent activity in the context of whether a person could consent to such acts. These cases provide much insight as to what status is given those acts in our society. In this respect, they aid us in ascertaining the intent behind section 708.-1.

In *Com. v. Appleby,* 380 Mass. 296, 402 N.E.2d 1051 (1980), the Supreme Judicial Court of Massachusetts addressed the question of whether a person could consent to an assault with a dangerous weapon. In *Appleby,* the defendant had been involved in a sadomasochistic homosexual relationship for approximately two years. *Id.* 402 N.E.2d at 1053. Defendant was charged with assault and battery with a dangerous weapon following a beating of his live-in partner with a riding crop. *Id.* at 1056. At trial, the defendant argued that he had beaten his partner with the riding crop only to satisfy his partner's sexual fantasies. *Id.* In rejecting defendant's appeal of his conviction, the Supreme Judicial Court stated that "[a]ny right to sexual privacy that citizens enjoy would be outweighed in the constitutional balancing scheme by the State's interest in preventing violence by the use of dangerous weapons upon its citizens under the claimed cloak of privacy in sexual relations." *Id.* at 1060. The court

further stated that the invalidity of the victim's consent to a battery "would be the same, however, whether or not the battery was related to sexual activity." *Id.*

In *People v. Samuels,* 250 Cal.App.2d 501, 58 Cal.Rptr. 439 (Cal.Ct.App.1967), the defendant was convicted of conspiracy, aggravated assault, and sodomy in connection with the distribution of sadomasochistic movies. One of the films depicted the defendant severely beating a naked man with a whip. *Id.* at 506, 58 Cal.Rptr. at 443. The defendant on appeal contended that the consent of the victim in the film was an absolute defense to the charge of aggravated assault and that the trial court erred in instructing the jury to the contrary. *Id.* at 512–13, 58 Cal.Rptr. at 447. The California Court of Appeals rejected defendant's argument, stating that "[e]ven if it be assumed that the victim ... did in fact suffer from some sort of mental aberration which compelled him to submit to a beating ... defendant's conduct in inflicting that beating was no less violative of a penal statute obviously designed to prohibit one human being from severely or mortally injuring another." *Id.*

In *State v. Brown,* 143 N.J.Super. 571, 364 A.2d 27 (N.J.Super.Ct.Law Div.1976), the victim, who was alcoholic, had an understanding with her husband that he would punish her by physically assaulting her if she consumed alcoholic beverages. *Id.* 364 A.2d at 28. The defendant husband appealed his conviction of attrocious assault and battery on the grounds that his wife had consented to the beatings. In rejecting defendant's argument, the New Jersey Superior Court, citing *Martin v. Commonwealth,* 184 Va. 1009, 37 S.F.2d 43 (Va.1946), held that "[i]f the doing of a particular act is a crime regardless of the consent of anyone, consent is obviously no excuse...." *Id.* 364 A.2d at 29. The court, analyzing the basis for such a rule, stated that "[t]he reasoning and public interest that is of concern and served by this rule is that of peace, health and good order. An individual cannot consent to a wrong that is committed against the public

peace." *Id.* Thus, to allow an otherwise criminal act to go unpunished because of a victim's consent would not only threaten the security of society but would also undermine the moral principles underlying the criminal law. *Id.* at 32.

The foregoing discussion compels us to conclude that, in the present case, the legislature did not intend sadomasochistic activity to be a "sport, social or other activity" under section 708.1. We are hesitant to give a precise definition of this term and believe it is more appropriate that its meaning be interpreted on a case by case basis. However, it is obvious to this court that the legislature did not intend the term to include an activity which has been repeatedly disapproved by other jurisdictions and considered to be in conflict with the general moral principles of our society. In fact, the statutory provision in question specifically excludes activities which would "create an unreasonable risk of serious injury." There can be little doubt that the sadomasochistic activities involved in this case expose persons to the very type of injury deemed unacceptable by the legislature. Were we to follow defendant's broad interpretation of "social activity," street fighting, barroom brawls and child molestation could be deemed acceptable social behavior, since such conduct is considered acceptable by some segment of society. This would violate the clear intent of the legislature. Moreover, stepping back from the entire picture of the offense, it is simply preposterous to advocate, as the dissent suggests, that the Iowa legislature even remotely intended that the sadomasochistic activity evidenced in this case was a "social or other activity" within the meaning of the statute.

The defendant's conduct in this case is no less violative of section 708.1 because such violent conduct was sexual in nature, rather than originating from heated argument. Whatever rights the defendant may enjoy regarding private sexual activity, when such activity results in the whipping or beating of another resulting in bodily injury, such rights are outweighed by the State's interest in protecting its citizens' health, safety, and moral welfare. *State v. Rasmussen*, 213 N.W.2d 661, 667 (Iowa 1973). A state unquestionably has the power to protect its vital interest in the preservation of public peace and tranquility, and may prohibit such conduct when it poses a threat thereto. *Beard v. City of Alexandria, La.*, 341 U.S. 622, 640, 71 S.Ct. 920, 931, 95 L.Ed. 1233, 1247 (1951); *State v. Farrell*, 209 N.W.2d 103, 107 (Iowa 1973), *vacated* 418 U.S. 907, 94 S.Ct. 3198, 41 L.Ed.2d 1154, *conformed to* 223 N.W.2d 270, 272 (Iowa 1974), appeal dismissed 421 U.S. 1007, 95 S.Ct. 2410, 44 L.Ed.2d 675 (1975).

Because we do not believe that the legislature intended sadomasochistic activity to be included as a social activity under section 708.1, we therefore hold that the trial court was correct in refusing to instruct the jury on the defense of consent.

## II.

Defendant also contends that the trial court erred in admitting into evidence two guns allegedly in defendant's possession because there was no chain of custody of evidence. We disagree.

Leanne Steele testified during the trial that the defendant kept two guns in a bureau drawer in his bedroom. She further testified that after the beating, she grabbed one of the guns from the drawer and shot at the defendant, and that subsequently the defendant pointed the other gun at her. When asked to identify both of the guns, Steele identified the two handguns as the guns usually kept in the defendant's drawer. On cross-examination, Steele admitted that she could not positively say that the State's exhibits one and two were not duplicates of the guns defendant kept in the drawer, but indicated that they were alike. On redirect, the trial court admitted the guns into evidence over defendant's objections that Steele could not positively identify the guns and that no chain of custody had been shown. Defense witness Rebecca Stonehocker later testified that the guns belonged to her and were

kept in the drawer for her protection and that she later took them to her uncle. Defendant denied having possession of either gun on August 3rd or August 4th.

▇▇▇ Admissibility of physical evidence is within the sound discretion of the trial court, and reversal is warranted only when there has been a clear abuse of that discretion. *State v. Hutchison*, 341 N.W.2d 33, 37 (Iowa 1983); *State v. Lamp*, 322 N.W.2d 48, 59–60 (Iowa 1982). The purpose of requiring a chain of custody is to insure that tampering, substitutions, or alteration did not occur. *Lamp*, 322 N.W.2d at 57. The object's susceptibility to alteration or substitution determines the sufficiency of the showing. *Id., State v. Gibb*, 303 N.W.2d 673, 681 (Iowa 1981). Questions concerning the characteristics or condition of the guns and whether Steele could without question identify the guns as defendant's go to the weight and credibility of the evidence as opposed to admissibility. *Hutchison*, 341 N.W.2d at 37. Only a prima facie showing of identity and connection to the crime is required. *State v. Galvan*, 181 N.W.2d 147, 151 (Iowa 1970). Clear, certain and positive proof is generally not required.

▇▇▇ We do not believe the trial court abused its discretion in admitting the two guns into evidence. While Steele could not positively identify the guns, she did testify that State's exhibits one and two were of the same type and condition of those kept in defendant's drawer. Additionally, Rebecca Stonehocker's testimony differed from Steele's only to the extent that Stonehocker claimed the guns were hers. The defendant only denied that he had possession of the guns on the date of the beating. Since it appears that the guns were found under circumstances affording a basis for a reasonable inference on the matter at issue, and because the trial court has broad discretion in such circumstances, the trial court did not abuse its discretion in admitting the guns into evidence.

AFFIRMED.

OXBERGER, C.J., and SNELL and SACKETT, JJ., concur.

SCHLEGEL, J., dissents.

HAYDEN, J., takes no part.

SCHLEGEL, Judge (dissenting).

I respectfully, but vigorously, dissent. The majority's decision of the jury instruction issue suffers from two glaring faults: it purports to decide an issue of statutory construction, but fails to analyze the statute; and it "discovers" the intent of the Iowa legislature by looking to case law from foreign jurisdictions. When this issue is analyzed correctly, it becomes clear that the trial court erred and failed to properly instruct the jury.

The issue presented to this court is whether sadomasochistic activity is "a sport, social or other activity" within the meaning of the statute. The majority opinion answers in the negative, but makes no attempt, in this case of first impression, to define "social or other activity." Although we need not try to give a definition that will settle all future questions, we should provide *some* guidance for lower courts. Such guidance can only be given by analyzing the statute.

The majority avoids analyzing the statute by searching for, and "discovering" the legislative intent behind the statute. While our ultimate goal is to ascertain legislative intent, *Emmetsburg Ready Mix Co. v. Norris*, 362 N.W.2d 498, 499 (Iowa 1985), I believe that the proper first step in achieving that goal is to look to the words of the statute itself. The majority skips that step. Instead, it examines case law from other jurisdictions. Even that would not be grounds for dissent if the cases cited by the majority construed a statute that was similar to the Iowa statute. Unfortunately, the four cases cited in the majority opinion do not construe a similar statute. In fact, one of the cases cited by the majority was a homicide prosecution. *Martin v. Commonwealth*, 184 Va. 1009, 37 S.E.2d 43 (1946). Because those cases are dissimilar from this case, all that can be gleaned from them are the general principles that

the State has an interest in protecting individuals from violence, and an interest in preventing breaches of the peace. Those principles do not, by themselves, resolve the issue presented by this case.

The statutory provision in question states:

Provided, that where the person doing any of the above enumerated acts, and such other person, are voluntary participants in a sport, social or other activity, not in itself criminal, and such act is a reasonably foreseeable incident of such sport or activity, and does not create an unreasonable risk of serious injury or breach of the peace, the act shall not be an assault.

I believe the legislature's choice of the words "sport, social or other activity,"—especially the nonspecific word "other"—shows an intent to make this exception applicable to a broad range of activities. Any public policy concerns about making the exception too broad are taken care of by the clauses that deny the exception to any activity that is "in itself criminal," or that "create[s] an unreasonable risk of serious injury or breach of the peace."

When the words "sport, social, or other activity" are analyzed together with the rest of the exception, it can be seen that the legislature, instead of listing all activities to which consent can be a defense, created a flexible framework that protects society's interest. The words "social or other activity" are not to be strictly construed. The limiting language of the statute, which is designed to protect individuals from violence and to prevent breaches of the peace, is found in the clauses following the words "social or other activity." I would therefore hold that sadomasochistic activity is "other activity" within the meaning of the statute.

Whipping a person with a belt, the actual activity involved in this case, is not "itself illegal." Nor do a swollen lip, large welts, and severe bruises constitute a serious injury within the meaning of Iowa Code section 702.18 (1983). Thus, the acts of the defendant are not, as a matter of law,

outside of the protection of the statutory defense of consent. A jury question on the issue, however, does exist.

It was the trial court's duty to instruct the jury fully and fairly. *State v. Sallis*, 262 N.W.2d 240, 248 (Iowa 1978). The requested instruction was proper, and the trial court's failure to submit it to the jury was reversible error.