**STATE of Iowa, Appellee,**

v.

**Robert APT, Appellant.**

**No. 58140.**

Supreme Court of Iowa.

Aug. 30, 1976.

Holmes, Ralph & Kutmus, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and Ray A. Fenton, Polk County Atty., for appellee.

Submitted to MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

In this appeal defendant Robert Apt contends that a prosecution for violation of the controlled substances law must fail if the officer involved permits an informer to violate that law in an effort to ferret out drug abusers.

Officer William Mingles used paid informer Mary Priebnow to meet persons selling drugs illegally. At the trial of defendant, charged with delivery of and possession with intent to deliver a controlled substance, Priebnow testified, "In the presence of Des Moines Police Officer William Mingles I smoked marijuana." Further:

Q. Then you were given permission to do so, is that correct? A. I imagine so. I wasn't getting stoned.

Q. Were you arrested at any time in the presence—in September of 1973, were you arrested for smoking pot or marijuana in the presence of a police officer? A. No.

Q. Did Officer Bill Mingles tell you that you could do that? A. He didn't say yes or no, either way.

Q. Did he permit it in his presence? A. Yes.

Q. Did he smell the marijuana? A. Yes.

Q. Did he see you smoke marijuana? A. Yes. . . .

Q. Why did you smoke dope in front of a police officer? A. Because it was giving the impression to other people that we were smoking.

The witness also testified that the narcotics squad in New Mexico, where she was a paid informer at time of trial, permitted her to smoke marijuana and hashish, and that this was also true in Des Moines.

Officer Mingles testified:

Q. Officer, did you permit or allow Mary Priebnow to smoke pot in front of you? A. Yes, sir.

Q. Why didn't you arrest her when she smoked in front of you? A. If I had, it would have probably cost a great deal of information, probably would have taken apart my identity as a police officer.

The jury found defendant guilty as charged and the trial court sentenced him. He appealed.

In his appeal, defendant takes a different approach than in the entrapment cases. See State v. Baumann, 236 N.W.2d 361 (Iowa) (paid informant frequently smoked marijuana with the defendant). Defendant contends here on constitutional grounds that if officers permit a paid informer to act illegally, evidence by the informer is per se inadmissible and a prosecution based on the informer's evidence is per se barred. Defendant bases his constitutional attack on due process and equal protection grounds. Perhaps the thought is that such an approach would obviate an admission by the accused that he did possess or deliver the contraband, as in the entrapment cases. In any event, we cannot accept the proposition that a paid informer's evidence is constitutionally inadmissible and a prosecution is constitutionally barred on a showing that officers permitted an informer to use a controlled substance.

I. As to due process, some of the principal decisions are Rochin v. California, 342

U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183; *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366; *Hampton v. United States,* 96 S.Ct. 1646, 48 L.Ed.2d 113 (U.S.); *United States v. DeSapio,* 435 F.2d 272 (2 Cir.), cert. den. 402 U.S. 999, 91 S.Ct. 2170, 29 L.Ed.2d 166, reh. den. 403 U.S. 941, 91 S.Ct. 2249, 29 L.Ed.2d 722; and *United States v. Spivey,* 508 F.2d 146 (10 Cir.), cert. den. 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104. *Rochin v. California* involved far different facts than the permitted use of a controlled substance by an informer. In *Rochin* the defendant swallowed two heroin capsules, and at the direction of a police officer a doctor forced an emetic solution through a tube into defendant's stomach, thereby obtaining the capsules. The Court said:

> This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation. 342 U.S. at 172, 72 S.Ct. at 209–210, 96 L.Ed. at 190.

In *United States v. Russell,* an undercover agent furnished the defendant an essential ingredient, legal in itself, for the manufacture of an illegal substance. Much of the decision deals with entrapment, but the Court also addressed the due process issue. The Court held that the agent's conduct was not so offensive as to transgress that constitutional guarantee. In the course of its remarks on that issue the Court said:

> The illicit manufacture of drugs is not a sporadic, isolated criminal incident, but a continuing, though illegal, business enterprise. In order to obtain convictions for illegally manufacturing drugs, the gathering of evidence of past unlawful conduct frequently proves to be an all but impossible task. Thus in drug-related offenses law enforcement personnel have turned to one of the only practicable

means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 373–374.

*Hampton v. United States* involved the sale to government agents by the defendant of a drug supplied to the defendant by a government informer. Five members of the Court upheld the conviction, in two opinions. The Court's plurality opinion of three justices bases the result on the defendant's predisposition to commit the crime. These justices state that under such circumstances, "If the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." 96 S.Ct. at 1650, 48 L.Ed. 2d at 119. The concurring opinion of two justices, however, withholds judgment on whether some cases of police overinvolvement in criminal activity would bar prosecution. In note 4 to the concurring opinion, the two justices refer to this statement in *United States v. Archer,* 486 F.2d 670, 676–677 (2 Cir.): "It would be unthinkable, for example, to permit government agents to instigate robberies and beatings merely to gather evidence to convict other members of a gang of hoodlums." In note 7 to the concurring opinion, the two justices state:

> Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction. This would be especially difficult to show with respect to contraband offenses, which are so difficult to detect in the absence of undercover government involvement. One cannot easily exaggerate the problems confronted by law enforcement authorities in dealing effectively with an expanding narcotics traffic, cf. *United States v. Russell, supra,* 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 373; *Tiffany, McIntyre, and Rotenberg, Detection of Crime,* 263–264 (1967), which is one of the major contri-

buting causes of escalating crime in our cities. See President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in A Free Society, 221–222 (1967). Enforcement officials therefore must be allowed flexibility adequate to counter effectively such criminal activity. 96 S.Ct. at. 1652–1653, 48 L.Ed.2d at 122.

In *United States v. Spivey* a paid informer, Redman, let the defendant move into his apartment with him and hosted "pot parties" there, in order to establish the pretense of being a drug dealer and obtain the defendant's confidence. Redman introduced government agents to the defendant, and the defendant sold them heroin. The court upheld the defendant's conviction for doing so. The court rejected the contention that the conduct of the government informer was so outrageous as to violate due process, stating, "Although we cannot deny that Redman possessed and distributed marijuana and that such activity is unlawful, we do not agree that defendant's constitutional defense is thereby successfully made out." 508 F.2d at 149.

*United States v. DeSapio* involved bribery and conspiracy, and knowledge by the FBI of the illegal activities taking place and of their informer's participation in them. As one defense the defendant asserted a violation of due process. The court rejected the defense, remarking on "the inadvisability of attempting to develop a penumbral doctrine that would add to the many collateral issues now pervading criminal trials still another, a judicial determination whether the activities of an informer had passed some ill-defined acceptable bounds." The court stated, "Where, as here, there is no claim that the informer's activity infringed any specific of the Bill of Rights or any statute of the United States relating to the conduct of investigations, and the competing considerations are such that we are unable to conclude that it violates the 'decencies of civilized conduct,' *Rochin v. California*, 342 U.S. 165, 173, 72 S.Ct. 205, 96 L.Ed. 183 (1952), such decisions had best be left to the executive branch, which is accountable for its conduct to Congress." 435 F.2d at 282.

We conclude that Priebnow's use of marijuana and Officer Mingles' permission for her to do so do not constitute such outrageous conduct as to violate due process.

II. As to equal protection, defendant contends that the prosecutor should not be permitted to prosecute defendant for possession and delivery of a controlled substance without also prosecuting Priebnow. We pass the questions whether Priebnow would be criminally liable and whether defendant himself could institute the criminal proceedings against her. As to the prosecutor's failure to do so, we think the prosecutor's decision was not an equal protection violation. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446, 453 ("Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged."); *United States v. Bell*, 165 U.S.App.D.C. 146, 506 F.2d 207, 222 ("Prosecutorial discretion in law enforcement, we have recognized, 'is by its very nature exceedingly broad.' And 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation,' but only so when 'the selection [is] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" Footnotes omitted.).

We find no equal protection violation.

We thus uphold the conviction and sentence.

AFFIRMED.