UNITED STATES of America, Appellee,

v.

Dale Edward ERICKSON, Appellant.

No. 79–1248.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Dec. 26, 1979.

---

4. Barker was an unindicted coconspirator in the present case. He was not a codefendant.

Stephen A. Ware, Denver, Colo., for appellant.

Thorwald H. Anderson, Jr., U. S. Atty. and Ann D. Montgomery, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before BRIGHT and HENLEY, Circuit Judges, and REGAN, Senior District Judge.[*]

REGAN, District Judge.

Dale Edward Erickson was convicted on January 16, 1979 of distributing 54.5 grams of cocaine, of possession with intent to distribute 241 grams of cocaine, and of conspiracy to distribute cocaine. For these offenses, Erickson was sentenced by the trial judge[1] to concurrent terms of three years plus a special term of parole. On appeal he presents two questions for our consideration: (1) Did the trial court err in not dismissing the charge of possession with intent to distribute, in that after distribution was made as charged in a separate count of the indictment, Erickson could no longer have possession with intent to distribute? and (2) Did the trial court err in not permitting the jury to determine whether the cocaine in question was legal or illegal?

On October 14, 1978, Hennepin County Deputy Sheriff Walter Powers arranged to purchase ten ounces of cocaine for the price of $21,000 from dealer James Larson at Larson's residence. Powers, however, had only $17,000 in official funds, and so told Larson that when the cocaine arrived he would take delivery in two installments. Powers would first take two ounces, sell it to a customer, and then return with the additional $4000 before receiving the remaining eight ounces of cocaine. Shortly thereafter, Marla Lyon, along with appellant, who was carrying a folded newspaper which concealed a brick of cocaine weighing approximately ten ounces, entered Larson's residence. In Larson's kitchen, appellant and Larson broke off part of the brick and weighed out 54.5 grams (approximately two ounces). While appellant continued to break up the brick, Larson took the 54.5 grams outside to deliver to Deputy Powers as per their agreement. After making this delivery Larson was arrested, at which time he told the officers that appellant along with Marla Lyon and the remainder of the cocaine were still inside the house. The officers entered the residence, found 241 grams of cocaine in the kitchen, and arrested appellant and Lyon in the living room.

■ Specifically, the appellant contends that once he had been charged with distribution of cocaine, the trial judge should have dismissed the charge of possession with intent to distribute since he no longer had possession. We disagree. The facts simply do not bear out this contention. When appellant entered Larson's kitchen he had possession of all 295.5 grams of cocaine. Thereafter, based on Larson's representation that the intended buyer had money, appellant *lost possession* of a portion of this cocaine when he assisted Larson in breaking off approximately 54.5 grams which were then distributed to Deputy Powers. Appellant, however, *retained possession* of the other 241 grams which he intended to distribute to Powers (through Larson) when Powers returned with the balance of $4,000.

[*] JOHN K. REGAN, United States District Judge, Eastern District of Missouri, sitting by designation.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

Therefore the indictment correctly charged that appellant, at the time of his arrest, had distributed approximately 54.5 grams of cocaine and had possession with intent to distribute another 241 grams.

 Appellant's remaining contention has to do with the propriety of the Court's instruction that: "Cocaine, either in natural or synthetic form, is one of the controlled substances included in this law." Although appellant made no objection to the instruction at the charge instruction nor proffered an alternate one, he made the following observation after all the instructions had been read: "I only have one comment, and that is you said that synthetic cocaine is identical, under the same law, as natural cocaine. I don't think that's true." Appellant's present position is that the instruction, which equated natural with synthetic cocaine, was improper because it precluded the jury from determining whether the cocaine in question was legal or illegal.

We find this contention lacking in merit particularly when the instruction is read in light of the uncontradicted evidence. Under the explicit language of the statute, any synthetic cocaine which has a chemical composition "equivalent" or "identical" [2] to that of natural cocaine comes within the proscription of the law.[3] And the undisputed evidence here [4] was that the chemical composition of the substance in question, whether of natural or synthetic origin, had the identical chemical composition of illegal natural cocaine. Therefore, for the purposes of *this* case it was *immaterial* that the trial judge did not instruct the jury that some forms of synthetic cocaine may not be illegal, so that appellant could not conceivably have been prejudiced.

Hence, assuming but not deciding that the trial court should have clarified the instruction, the error, if any, was harmless beyond a reasonable doubt in view of the overwhelming evidence of appellant's guilt. *United States v. Runge*, 593 F.2d 66, 69 (8th Cir. 1979).

Finding no error, we affirm.

---

**2.** Title 21, United States Code, § 812, Schedule II(a)(4) defines as a controlled substance:

Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is *chemically equivalent or identical with any of these substances* . . .

**3.** *See United States v. Wilburn*, 549 F.2d 734, 737 (10th Cir. 1977).

**4.** Briefly summarized, at trial the prosecution called an expert witness who identified the substance found in Larson's kitchen as cocaine. On cross-examination, although this expert could not definitively state whether it was natural or synthetic cocaine, she did testify that, no matter what the origin was, the chemical composition of the substance in question was identical to that of natural cocaine. Appellant presented no evidence to the contrary.