**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Angel Oscar ROSADO–FERNANDEZ and**
**Jose Eligio Borges, a/k/a Jose Velez,**
**Defendants-Appellants.**

No. 79–5412
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 17, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Gino P. Negretti, Miami, Fla., for Rosado-Fernandez.

Denis Dean, Sr., (court-appointed) Miami, Fla., for Borges.

Ian M. Comisky, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellants Jose Eligio Borges and Angel Oscar Rosado-Fernandez, along with two other defendants,[1] were convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2. Rosado was also

---

1. Nelson Antonio Garcia Rodriguez and Jose Virgilio Zayas Aguero.

convicted of use of a communication facility during the course of and in the commission of a felony, in violation of 21 U.S.C. §§ 841(a)(1), 846, 843(b).[2] On appeal, Borges contends that there is insufficient evidence to convict him of the conspiracy charge, and also contends that he cannot be found guilty of the possession charge since he never had actual possession of the cocaine in question. Rosado contends that the Government failed to prove that the cocaine involved in the attempted drug transaction was "L" cocaine rather than purportedly legal "D" cocaine. The contentions of both appellants are meritless and we affirm.

On January 3, 1979, Agent John Lawler of the Drug Enforcement Agency (DEA), acting in an undercover capacity as a New York cocaine buyer, went to the residence of appellant Borges. Lawler informed Borges that he wanted to buy three kilos of cocaine. Borges quoted a price, and stated that delivery could be arranged. During the conversation Borges was sifting a white powder on his kitchen table. He stated the cocaine would be better than that on the table. Borges then made a phone call in Spanish and told Lawler to return later that evening. When Lawler returned the parties agreed to meet still later at a nearby restaurant. Borges indicated he would bring his supplier to the restaurant.

Later that evening, Borges came to the restaurant accompanied by appellant Rosado, and Rosado's stepfather. Borges introduced Rosado to Lawler, and Lawler stated he was interested in purchasing three kilos of cocaine. Rosado stated it would be no problem as he had 40 kilos in the area. Borges was present during this entire conversation. Rosado then made a phone call and told Lawler the cocaine would be delivered to an apartment. Rosado and Lawler discussed delivery and agreed that they would be the only ones present during the actual transaction. Borges concurred in this arrangement. No actual delivery took place that evening.

The next day Lawler and Rosado had a series of telephone conversations, which were recorded and played for the jury. During the conversations, Rosado apologized for the delay and stated the price would be $46,000 per kilo. Lawler and Rosado later met at the home of the third codefendant Nelson Garcia. A quantity of white powder was produced, and Lawler tested it. The test indicated that the powder was cocaine. Shortly thereafter arrests were made. While Garcia and Rosado were being arrested, the fourth codefendant Zayas took the cocaine and dumped it into the swimming pool. Agent Lawler dove in the pool and recovered samples of the water and the cocaine, as well as a sample from the table inside. All samples were found to contain cocaine.

Borges does not deny that he introduced Agent Lawler to codefendant Rosado, but he contends that he had no part of the final drug transaction involving Rosado and codefendant Garcia. He argues that the Rosado-Garcia drug transaction is a separate conspiracy, as the purchase arranged by him was to involve Rosado and a drug

2. Borges was given sentences of four years, plus a special parole term of three years, for the conspiracy and possession convictions. Rosado was sentenced to five years' imprisonment for both the conspiracy and possession convictions, was sentenced to one year imprisonment for the communication facility offense, and must serve a special parole term of three years. All sentences are to run concurrently.

There is apparently a clerical error in the Judgment and Commitment Order entered by the court as to Rosado. The Judgment and Commitment Order states:

The defendant is hereby committed to the custody of the Attorney General or his authorized representative for a period of FIVE (5) YEARS as to Count One of the Indictment [conspiracy with intent to distribute cocaine]. Further that he serve a Special Parole Term of THREE (3) YEARS upon the expiration of his initial sentence of THREE (3) YEARS. The court ordered Rosado imprisoned for five years as to count two of the indictment, the possession charge. The second phrase in the order, quoted above, which refers to Rosado's "initial sentence of THREE (3) YEARS" is obviously a clerical error as it conflicts with the first phrase imposing a five-year term and the five-year term imposed as to count two. The district court will therefore correct this clerical error in the Judgment and Commitment Order upon remand.

source other than Garcia. The fact that Rosado eventually obtained the cocaine from a source not originally contemplated by Borges, however, is not sufficient to exonerate Borges.

To be convicted of conspiracy, a defendant must have knowledge of the conspiracy, and must intend to join or associate himself with the objectives of the conspiracy. *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir. 1979) (*en banc*). Knowledge, actual participation and criminal intent must be proved by the Government. Participation, however, need not be proved by direct evidence; a common purpose and plan may be inferred from a pattern of circumstantial evidence. *Id.* The essential elements of a criminal conspiracy are an agreement among the conspirators to commit an offense attended by an overt act by one of them in furtherance of the agreement. *United States v. Barrera*, 547 F.2d 1250, 1256 (5th Cir. 1977). However, under the provisions of the drug conspiracy statute involved here, it is not necessary that an overt act be alleged or proved. *Cacace v. United States*, 590 F.2d 1339, 1340 (5th Cir. 1979).

The facts at trial established a conspiracy between Borges and Rosado to sell cocaine to Lawler. They agreed to commit an offense against the United States. Borges was the organizer of the venture. He set up the meeting, and was present during the negotiations for the sale of the cocaine. The conspirators need not know each other nor be privy to the details of each enterprise comprising the conspiracy as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope. *United States v. Becker*, 569 F.2d 951 (5th Cir. 1978). Borges knew that Lawler wanted to buy cocaine. Borges knew that Rosado would obtain the cocaine for Lawler from one of Rosado's several sources. Under these circumstances the conspiracy was proved.

Borges next contends that he cannot be convicted of possession since the evidence shows he never had physical control of the cocaine involved in the transaction. It is undisputed, however, that Rosado had possession of the drug. A party to a continuing conspiracy may be responsible for a substantive offense committed by a coconspirator in furtherance of the conspiracy even though that party does not participate in the substantive offense or have any knowledge of it. *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946). As we stated recently in *United States v. Michel*, 588 F.2d 986, 999 (5th Cir. 1979):

> Once the conspiracy and a particular defendant's knowing participation in it has been established beyond a reasonable doubt, the defendant is deemed guilty of substantive acts committed in furtherance of the conspiracy by any of his criminal partners. *United States v. Sullivan*, 578 F.2d 121, 122–23 (5th Cir. 1978). This principle has been repeatedly applied by this circuit in cases involving drug conspiracies and substantive drug violations.

Appellant Rosado contends there are two types of cocaine, "L" and "D," so denominated because of the molecular structure of these two particular cocaine isomers. Rosado concedes that "L" cocaine is illegal, but contends that the "D" isomer of the drug is legal. Rosado points to no substantial authority for this rather novel contention, but nevertheless argues that his conviction must be reversed because the Government did not establish which type of cocaine was in evidence against him. The contention is meritless.

At trial, codefendant Garcia raised the objection that the Government had not shown that the powder was the "L" isomer of cocaine. At that point, government counsel stated that its expert chemist had performed a polarimeter test[3] which identified the substance as "L" cocaine. The

---

**3.** During a polarimeter test, a chemist passes polarized light through the substance tested. The manner in which the light is refracted by

the sample allows the chemist to deduce the molecular structure of the sample.

court then offered to bring back the chemist to testify that the substance was, in fact, illegal. At this point, defense counsel stipulated that if the chemist were recalled he would testify that the substance was "L" cocaine.

Appellant Rosado, by not objecting during this interchange, tacitly adopted the stipulation proffered by codefendant Garcia. Moreover, even disregarding this stipulation, there is adequate evidence of record that the substance involved was an illegal cocaine isomer. The Government's chemist viewed each sample of the cocaine with gaslight chromatography, a mass spectroscope, and a polarimeter. The chemist stated that based upon the analyses he performed, the exhibits contained cocaine. The chemist further stated that a polarimeter test had been conducted in order to determine the optical rotation of the substances, and that based upon such a test he could determine whether the cocaine tested was the "L" or "D" type. In his expert opinion, the substances involved here were cocaine.

There being no error in the trial, the convictions of appellants Jose Eligio Borges and Angel Oscar Rosado-Fernandez are

AFFIRMED; REMANDED for correction of appellant Rosado's sentence.