STATE of Iowa, Appellee,

v.

Allan Banks GIBB III, Appellant.

No. 63765.

Supreme Court of Iowa.

March 18, 1981.

Lad Grove, Ames, for appellant.

Thomas J. Miller, Atty. Gen., Kathy Krewer, Asst. Atty. Gen., Ruth Harkin, Story County Atty., and Richard O. Parker, Asst. Story County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, McCORMICK, ALLBEE, and LARSON, JJ.

REYNOLDSON, Chief Justice.

A three-count information charged defendant Allan Banks Gibb III with three separate incidents of delivering a Schedule II narcotic drug, cocaine, for a profit, in violation of section 204.401(1)(a), Code Supp. 1977. Following a jury trial he was convicted on all counts and sentenced to a $1000 fine and a ten-year prison term on each charge, two of the prison terms to be served consecutively. Defendant appeals. We affirm on two counts, reverse on the third, and remand.

Defendant's arrest resulted from an undercover drug traffic investigation by the Story county attorney and sheriff's office. Deputy sheriff David Anderson, age 26, operated as an undercover agent. He cultivated an acquaintance with defendant's friend, John Furman. Through Furman, Anderson arranged three cocaine "buys" from defendant. These purchases occurred September 16, 1978 (five grams for $500), October 25, 1978 (fourteen grams for $1185), and November 4, 1978 (one-fourth pound for $9000). In the last transaction the money, although displayed to defendant, was not paid. He and Furman were arrested. Furman later entered a guilty plea and the State called him as an adverse witness in this case.

Defense counsel in opening statement conceded defendant had delivered the cocaine on the three occasions, and told the jury the only issue was whether these were deliveries for profit or deliveries as an accommodation to a friend.

Defendant raises sixteen grounds for reversal of the district court judgment. We address these issues in the fourteen divisions that follow.

I. *Was trial court right in overruling defendant's pretrial motion to dismiss, grounded on alleged reprehensible police conduct?*

■ Defendant produced several witnesses in support of this motion. Trial court's ruling denying the motion concluded that from this testimony a fact finder "could find,"

that during that investigation Deputy Anderson 1) contacted and used the juveniles as providers of information without the knowledge or consent of the juvenile's parents, 2) purchased for and furnished to the juveniles beer, 3) provided on one occasion his own marijuana for them to smoke, and 4) operated his motor vehicle with the juveniles in it when he was under the influence of an alcoholic beverage, [and] that the Officer had no authority from his superiors to engage in any criminal conduct as a part of his undercover work other than the commis-

sion of simple misdemeanors regarding the personal consumption of alcohol on a public highway and the disobedience of minor traffic regulations. Neither did he have authority from his superiors to use minors as contacts without parental permission.

Anderson took the stand, denied he was intoxicated on any occasion, and further denied he bought alcoholic beverages or distributed them to minors. He admitted two minor traffic violations and that he had consumed beer on a public highway. With respect to the marijuana incident, he asserted the substance was supplied by the minor girls, and that he held the pipe but did not smoke it.

Trial court assumed, without deciding, that Anderson participated in the illegal activities as claimed, but nonetheless held the conduct was "not so outrageous" that defendant's prosecution should be aborted. We agree.

There is no nexus between Anderson's alleged conduct with the sophisticated minors and the defendant. The latter was not present during any of the alleged illegal activity. These acquaintances only led Anderson to Furman; that contact in turn led to defendant. Defendant does not suggest how Anderson's alleged conduct, described above, affected him, and he raises no claim of entrapment. In making this observation we do not foreclose the possibility of barring prosecution in extreme cases, even where an entrapment defense is not established. *See State v. Pooler*, 255 N.W.2d 328, 330–31 (Iowa 1977).

Courts have recognized the necessity to infiltrate drug rings may require a limited participation in unlawful practices. *See United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 373–74 (1973); *United States v. Spivey*, 508 F.2d 146, 148–49 (10th Cir.), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *State v. Apt*, 244 N.W.2d 801, 803–04 (Iowa 1976).

We hold our decisions in *Pooler* (undercover police officer participated in break-in

with defendant) and *Apt* (undercover officer permitted informant to smoke marijuana in his presence) control here. If defendant's evidence relating to Anderson's conduct is true, we agree it was reprehensible. Nonetheless, it was unrelated to any activity involving defendant, and not "so outrageous and reprehensible that a defendant whose rights were not infringed should be acquitted because of it." *Pooler*, 255 N.W.2d at 331. Trial court properly overruled the motion.

II. *Was trial court right in overruling defendant's motion for separate trial on each count?*

■ Confronted with the three-count information, defendant moved for separate trial upon each count, alleging that otherwise the jury would "improperly [consider] evidence of other crimes in the determination of whether or not the Defendant is guilty of any of the alleged crimes." His allegations of constitutional due process and equal protection violations were not asserted here. Trial court overruled the motion, noting defendant "failed to show any prejudicial effect ... which would overcome the State's interest in trying the offenses at one time to preserve time and money."

The grouping of controlled substance violations is governed by a special statute tailored for the purpose. Section 204.408, The Code, relevantly provides:

Information, indictments, trial, and sentencing for violations of this [Uniform Controlled Substances] chapter may allege any number of violations of their provisions against one person and join one or more persons as defendants who it is alleged violated the same provisions in the same transaction or series of transactions and which involve common questions of law and fact. The several charges shall be set out in separate counts .... The court may grant severance and separate trial to any accused person jointly charged or indicted if it appears that substantial injustice would result to such accused person unless a separate trial was granted.

The above statute is more inclusive than Iowa Rule of Criminal Procedure 6(1), which permits offenses "arising out of the same transaction or occurrence" to be alleged and prosecuted "as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise." In *State v. Evans*, 248 N.W.2d 521, 523 (Iowa 1976), relying on the section 204.408 "series of transactions" language, we held defendant's two incidents of controlled substance delivery were properly joined under separate counts in an information.

A strict construction of section 204.408 arguably would permit severance only to an accused who is "jointly charged." But we have indicated severance of charges may be permitted to a defendant who has carried the burden to show his or her interest in receiving a fair trial, uninfluenced by the prejudicial effects that could result from prosecuting a multicount information, outweighs the State's interest in judicial economy. *State v. Trudo*, 253 N.W.2d 101, 104 (Iowa), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 189 (1977); *see* Iowa R.Crim.P. 10(2)(e) (request for severance of charges or defendants). Defendant must show trial court abused its discretion by refusing to sever the charges. *See State v. Belieu*, 288 N.W.2d 895, 900 (Iowa 1980).

In this case trial court instructed the jury "that the charge contained in each count is to be separately considered and separately determined by you without any regard to any of the other counts." We believe the jury was capable of following, and did follow, this instruction. *See State v. Hepburn*, 270 N.W.2d 629, 632 (Iowa 1978).

The three cocaine sales charged in the separate counts constituted a series of transactions involving the same persons and the same law. The economy of one trial clearly outweighed any potential prejudice to defendant. We hold trial court rightly overruled the severance motion.

III. *Did trial court commit reversible error in overruling defendant's objection to a question whether a public officer had any conversation with him following his arrest?*

Special agent Wilbur participated in the third cocaine sale in Ames and the related

arrests. He heard another officer give defendant the *Miranda* warning. Wilbur then drove defendant to Nevada in defendant's car.

On Wilbur's direct examination the following testimony occurred:

Q. And did you have any conversation with [defendant] during the transportation to Nevada, or upon your arrival?

MR. GROVE: Objection, Your Honor. I object to any conversation with the defendant from Ames to Nevada for the reason that the defendant had not been afforded the right to contact counsel at that point.

THE COURT: Overruled on the record made.

A. I asked Mr. Gibb questions. However, he exercised his right to remain silent.

The above question was asked in developing the circumstances surrounding defendant's producing two more packets of cocaine in response to Wilbur's question whether defendant had any other "controlled substance" in the vehicle, a matter we take up in division VII.

The same question had been asked and almost the same answer elicited as part of a prior in-chambers proffer, without comment or objection by defendant. Defendant neither moved to strike the answer nor moved for mistrial.

On appeal defendant argues the question impermissibly penalized him for exercising his fifth amendment right to remain silent, citing *Miranda v. Arizona*, 384 U.S. 436, 468 n.37, 86 S.Ct. 1602, 1625 n.37, 16 L.Ed.2d 694, 720 n.37 (1966), and *State v. Porter*, 283 N.W.2d 351, 352–53 (Iowa 1979). That ground was first asserted in defendant's motion in arrest of judgment and application for new trial.

■ Proper preservation of alleged errors committed by trial court in the introduction of evidence at trial ordinarily requires timely objections, raised at the earliest time the error becomes apparent. *State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977); *State v. Boose*, 202 N.W.2d 368, 369 (Iowa

1972); *see State v. Steltzer*, 288 N.W.2d 557, 558 (Iowa 1980). A motion to strike is not a useless gesture because it aids trial court in understanding the nature of the error claimed and provides an opportunity for the court to correct any error committed. *Reese*, 259 N.W.2d at 775. Generally, a mistrial motion must be made when the grounds therefor first become apparent. *State v. Gilmore*, 259 N.W.2d 846, 852 (Iowa 1977); *State v. Ware*, 205 N.W.2d 700, 702 (Iowa 1973).

■ We hold this alleged error was not preserved. *See State v. Matlock*, 289 N.W.2d 625, 628 (Iowa 1980); *State v. Whiteside*, 272 N.W.2d 468, 472 (Iowa 1978).

IV. *Was defendant denied his right to a public trial when the courthouse doors were locked during an evening session when the jury instructions were read?*

■ Defendant asserts the public was excluded from that portion of the trial at which the jury instructions were read, in violation of his right to a "complete" public trial. The issue was first raised by identical allegations in defendant's motion in arrest of judgment and in the application for new trial, without reference to either the United States or Iowa constitutions. Passing the issue whether any alleged error was thus preserved, we examine the merits of this contention.

The record developed on this issue reflects final arguments in this case commenced at about 5:00 p. m. in the courtroom on the second floor in the Story County courthouse. Spectators were present for the arguments. The jury was excused for dinner, and was to return at 8:00 p. m. to receive the instructions. One of the two janitors testified the ground floor courthouse doors were locked at 5:00 p. m., apparently the customary practice.

At about 8:00 p. m. defendant and his counsel came to the front door of the courthouse and were admitted by the janitor. The latter could not recall anyone else seeking admittance, although he was on the first floor until the trial concluded. Persons could obtain admission to the court-

house by use of a call button at the front door or through the sheriff's office, which was at the back of the courthouse.

Apparently the jury was let in and out the doors by the bailiff, who had a key. The trial judge did not leave his chambers on the second floor, but continued to review the instructions. He was unaware of any alleged exclusion. Defense counsel did not mention to trial court that the doors were locked or that a call button was used to gain access to the building. Following the evening meal recess there were no spectators in the courtroom. There was no evidence anyone had been excluded.

Trial court overruled these grounds in the motion and application, asserting any alleged error was invited by defendant and counsel by their failure to call the court's attention to the locked doors, and any alleged error was waived by the same conduct. Defendant argues trial court impermissibly imposed on him a burden to show prejudice by its finding "[t]here was no showing that other persons sought admission but were unable to get in."

Defendant relies on *State v. Lawrence*, 167 N.W.2d 912 (Iowa 1969). In that case a bailiff misinterpreted the court's directions and excluded the public while the instructions were read to the jury. He in fact turned people away, including a newspaper reporter. The *Lawrence* court traced the historic underpinnings of an accused's basic constitutional right to a public trial. The court further observed that a "public trial" included the entire trial from the impaneling of the jury to the rendering of the verdict. *Id.* at 913–15. It rejected the State's contention that it was incumbent upon the defendant to show he was prejudiced or harmed by the exclusion of the public, *id.* at 916–17, and reversed and remanded for new trial.

More recently, the United States Supreme Court in *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, ——, 100 S.Ct. 2814, 2830, 65 L.Ed.2d 973, 992 (1980), held that in absence of an overriding interest articulated in findings, the trial of a criminal case must be open to the public. It

could not be closed, even on defendant's unopposed motion granted by trial court. *See id.* at ——, 100 S.Ct. at 2819, 65 L.Ed.2d at 979. The Court found the right of the public and press to be present and to observe the proceedings was implicit in first amendment guarantees. *Id.* at ——, 100 S.Ct. at 2829, 65 L.Ed.2d at 991–92.

Against this backdrop we examine the facts that generate this issue. Because defendant alleges denial of a constitutional right, we make an independent evaluation of the totality of the circumstances. *See Sims v. State*, 295 N.W.2d 420, 422 (Iowa 1980); *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975). Although the prosecutor's failure to take this issue seriously resulted in a skimpy record, there is a clear inference access to this county courthouse was somewhat limited in the evening and nighttime hours. Whether the county jail was located in the structure does not appear, but the sheriff's office and presumably other offices were located on the ground floor. Access was available by ringing a doorbell at the main door and through the sheriff's office, which apparently was manned. Although the janitor (who remained on the ground floor throughout the relevant time) testified he would have sent persons he did not know to the sheriff's entrance, we find this was not an unreasonable obstacle to any persons wanting to hear the instructions read. While we do not approve the precautions, we find the access provided was not so restricted as to deprive defendant of his constitutional right to a public trial.

■ In addition, we find defendant did not timely object to the procedure he claims deprived him of a public trial. Of course, a party alleging a constitutional violation in the progress of a trial ordinarily must show he or she lodged an appropriate objection at the earliest available opportunity in the progress of the case. *State v. Paulsen*, 293 N.W.2d 244, 247 (Iowa 1980); *State v. Coffee*, 182 N.W.2d 390, 395 (Iowa 1970); *see State v. Pelelo*, 247 N.W.2d 221, 225 (Iowa 1976). Defendant now considers it significant that there were spectators during the

arguments but none following the dinner recess when the instructions were read. Surely it must have been even more significant at that time (assuming it was not simply loss of interest because the fireworks were over), when coupled with the experience of defendant and his counsel in having just been admitted to the courthouse by a janitor who unlocked an outside door. The appropriate time to have objected and to have called this situation to trial court's attention was then, when it easily could have been corrected.

For these reasons, we hold this allegation of error is without merit. In so holding, we do not indicate a defendant's failure to object in such circumstances could affect the rights of nonparties to be present at a criminal trial.

V. *Did trial court err in directing defendant, in the presence of the jury, to answer the State's question about the source of his cocaine?*

■ We have already noted defense counsel on opening statement conceded defendant made the cocaine deliveries. Defendant took the witness stand and testified he made no profit on the transactions, but merely turned the money over to the people from whom he obtained the cocaine.

On cross-examination the State sought the names of those suppliers in several ways. Defendant refused to answer, stating he was afraid of retaliation against his family. Eventually the prosecutor requested the court to direct defendant to answer. After carefully ascertaining the sole reason for defendant's refusal was fear for his family's safety, trial court, in the jury's presence, directed defendant to answer the question. When defendant again refused the court excused the jury.

Trial court then verified on the record that defense counsel, in an unreported sidebar discussion, had requested the court not to direct defendant to answer in the jury's presence, because it might prejudice the jury against his client. The court observed the question was proper cross-examination and that the jury should be entitled to draw whatever inference it might from the refusal.

Still in the jury's absence, trial court found defendant guilty of contempt of court and imposed imprisonment as a penalty. We upheld this judgment in *Gibb v. Hansen*, 286 N.W.2d 180 (Iowa 1979).

Defendant offers no authority to support his contention trial court erred in directing him to answer the question in the jury's presence, nor have we found any. The question asked was proper cross-examination. *See id.* at 186; *State v. Sparks*, 238 N.W.2d 777, 779 (Iowa 1976).

Trial court had a right to expect defendant to respond to his direction. In any event, the jury had a right to draw an inference from defendant's failure to respond to that direction. We find no error in these circumstances.

VI. *Did trial court permit the State to range too far in defendant's cross-examination?*

■ Generally, the allowance or denial of cross-examination is a matter of trial court discretion. An appellate court will reverse only for an abuse of discretion, and then only if it appears that prejudice resulted. *See State v. Ege*, 274 N.W.2d 350, 357 (Iowa 1979); *Avery v. Harms Implement Co.*, 270 N.W.2d 646, 649 (Iowa 1978); *State v. Frazer*, 267 N.W.2d 34, 38 (Iowa 1978).

■ Division V disposes in part of defendant's allegation trial court permitted the State to go beyond the scope of defendant's direct examination. We hold trial court did not abuse its discretion in permitting the questions relating to defendant's acquaintance with his supplier, and the identity of the supplier. *See Gibb*, 286 N.W.2d at 186.

But defendant asserts impermissible questions were asked relating to his relationship with John Furman. He testified on direct examination he had known Furman two years, had received money from him in the two transactions, and that Furman owed him money from a previous "loan." On cross-examination he was asked if Furman had called him between Septem-

ber 1 and September 16 for reasons other than the purchase of cocaine. Trial court overruled an objection that the question plunged beyond the scope of direct examination. Defendant answered, "Yes, he saw me or stopped over or called me."

Defendant does not indicate how the court's ruling prejudiced his case; in fact, the answer would support his entrapment theory. We find no abuse of discretion in these rulings.

VII. *Did trial court properly overrule defendant's chain-of-custody objections to the controlled substance exhibits?*

In three divisions of his brief defendant asserts trial court erred in overruling his chain-of-custody objections to exhibits consisting of the various parcels of cocaine he delivered or had in his possession. Certain of his objections were general, others identified a period not covered by the alleged defects he asserts here. Nonetheless, we have examined the merits of his contentions.

█ In our analysis we have applied certain principles, which are now well established in our case law. Admission of evidence over a chain-of-custody objection is a matter within trial court's discretion, and reversal is warranted only upon a clear showing that discretion was abused. *State v. Orozco*, 290 N.W.2d 6, 10 (Iowa 1980); *State v. Mayes*, 286 N.W.2d 387, 391 (Iowa 1979); *State v. Langlet*, 283 N.W.2d 330, 336–37 (Iowa 1979); *State v. Kantaris*, 280 N.W.2d 389, 392 (Iowa 1979); *State v. Bakker*, 262 N.W.2d 538, 543 (Iowa 1978).

█ The showing required is that it be reasonably probable tampering, substitution or alteration did not occur. *Orozco*, 290 N.W.2d at 10; *Langlet*, 283 N.W.2d at 336; *Kantaris*, 280 N.W.2d at 392. This is particularly important when dealing with items such as drugs, which are susceptible to tampering. *Orozco*, 290 N.W.2d at 10; *State v. Jeffs*, 246 N.W.2d 913, 915 (Iowa 1976). The trial court may be aided in this determination by presuming State agents would not tamper with the evidence. *Kantaris*, 280 N.W.2d at 392; *State v. Branch*, 222

N.W.2d 423, 426 (Iowa 1974). When trial court has determined that the identification of the exhibit is sufficient, contrary speculation affects the weight of the evidence but not its admissibility. *Orozco*, 290 N.W.2d at 10; *Langlet*, 283 N.W.2d at 336.

█ Several of defendant's complaints on appeal are directed to intervals when the parcels of cocaine were in the hands of scientists in the Division of Criminal Investigation for analysis. Under certain circumstances we have held a trial court properly overruled a chain-of-custody objection even though one of the persons in the chain of custody did not testify. See *Kantaris*, 280 N.W.2d at 392; *State v. Thomas*, 222 N.W.2d 488, 492–93 (Iowa 1974). Here the evidence disclosed the circumstances surrounding the custody of the exhibits and the unlikelihood of intermeddlers tampering with them. See *Bakker*, 262 N.W.2d at 543. We find the State adequately accounted for the continuous custody of the exhibits from the time they passed from defendant's possession. See *Orozco*, 290 N.W.2d at 10. Trial court rightly accorded the State the presumption State agents would not tamper with the evidence. See *id.*

Defendant raises an additional ground for holding trial court erred in overruling his objection to State's exhibit 5, consisting of two grams of cocaine defendant had in his possession when arrested.

This cocaine surfaced in the interchange between defendant and agent Wilbur when they arrived at Nevada following defendant's arrest. We have referred to this incident in division III.

These exhibits were identified in the following portion of Wilbur's testimony:

Q. What happened upon your arrival here in Nevada? A. After parking the vehicle, I asked Mr. Gibb if he had any other controlled substance in the vehicle.

Q. And what did he respond?

MR. GROVE: Objection, Your Honor, being irrelevant and immaterial.

THE COURT: Overruled.

A. He advised that he had two small packets in a cigarette package in his pocket.

Q. And what did he do?

MR. GROVE: Objection, Your Honor, being irrelevant and immaterial.

THE COURT: Overruled.

A. He advised me to take possession of those packets.

Q. I will hand you what's been marked State's Exhibit No. 5 for identification. I ask if you can identify that. A. Yes, this is the evidence envelope in which I sealed the two ... magazine packages containing white powder.

. . . .

Q. Those are the two items you received from Defendant Gibb? A. Yes.

Defendant's in-chambers objections to exhibit 5 added the ground that the exhibit would be evidence of a separate criminal charge. Trial court allowed this evidence on the theory it tended to show "the defendant ... had knowledge of the fact he was dealing in a controlled substance on that day."

No charges were filed against defendant based on the packets of cocaine he had in his pocket. Exhibit 5 thus was evidence of another crime—possession of that substance. Of course evidence of a crime other than that charged is inadmissible as bearing on defendant's guilt unless it falls within one of the established exceptions. *See Jeffs*, 246 N.W.2d at 915.

■ The basic principle upon which admission of such evidence turns is relevance. If the evidence tends to prove some fact relevant to the crime charged it is properly received even if it necessarily establishes another offense. *See State v. Wright*, 191 N.W.2d 638, 640 (Iowa 1971). In *Wright*, we identified the exceptions to the general rule, which permit reception of such evidence. *Id. See State v. Zuch*, 267 N.W.2d 52, 54 (Iowa 1978); *State v. McDaniel*, 265 N.W.2d 917, 921 (Iowa 1978).

But even when such evidence has some relevancy the trial court must exercise discretion to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *McDaniel*, 265 N.W.2d at 921; *State v. Johnson*, 224 N.W.2d 617, 621 (Iowa 1974).

We believe this evidence might be admitted under several of the exceptions to the general inadmissibility rule. We are satisfied, however, that it was admissible under the "intent" exception.

■ Scienter is an element of the offense of delivery of a controlled substance. *State v. Osmundson*, 241 N.W.2d 892, 893 (Iowa 1976). Here trial court's instructions required the State to prove beyond a reasonable doubt "[t]hat the Defendant knew that the substance delivered was cocaine and knew that it was a controlled substance." Defendant produced the cocaine identified as exhibit 5 in response to a question whether he had any other "controlled substance." This bears directly on his knowledge the other cocaine he intended to deliver was a controlled substance.

■ Defendant seems to concede exhibit 5 would tend to prove such knowledge and intent. However, he argues he did not dispute such knowledge, therefore the evidence was unnecessary and inadmissible. We pass for the moment the issue defendant independently raises, which we discuss in division X, that the substance was not in fact a controlled substance. Defendant's concession of an issue does not preclude the State from presenting evidence to establish that element of the crime. *See State v. Moore*, 276 N.W.2d 437, 441 (Iowa 1979); *State v. Fryer*, 243 N.W.2d 1, 7 (Iowa 1976); *State v. Jones*, 89 Iowa 182, 188, 56 N.W. 427, 429 (1893). Turning to the probative value—prejudice balancing test, we find the probative value of this evidence is significant. Its overall prejudicial effect might have been greater if defendant had not admitted delivering three other parcels of cocaine. We hold the jury was entitled to this evidence, and defendant's objections to exhibit 5 were properly overruled.

Nor do we find error in the admission of the other cocaine exhibits.

VIII. *Did trial court err in not permitting cross-examination of Furman to show the alleged use of cocaine by Officer Anderson?*

Furman was called as an adverse witness by the State. He testified that at the time

of the September 16 transaction with defendant he obtained two grams of cocaine for himself.

On cross-examination of Furman, defendant sought to secure testimony that on an unspecified date between October 7 and October 14, 1978, Furman sold Officer Anderson two grams of cocaine and the latter "snorted" some of this controlled substance in Furman's presence. The State's objection included the grounds it was an unrelated transaction and the time was not fixed. Trial court sustained the objection because the evidence was not probative of the issue whether the officers used Furman in the arrangements to make "buys" from defendant on October 25 and November 4. Trial court observed this evidence might have been relevant on the issue whether Furman was entrapped, but that it was not probative on the issue of defendant's entrapment.

■ Defendant's entrapment defense was predicated upon the "private entrapment" theory of State v. Tomlinson, 243 N.W.2d 551 (Iowa 1976), State v. Leonard, 243 N.W.2d 75 (Iowa 1976), and State v. Ostrand, 219 N.W.2d 509 (Iowa 1974). This defense required defendant (1) to tie the individual to the police officers to show he was acting for them, and (2) to show the inducements employed by the individual to entrap the accused, that is, to induce the commission of the offense "by persuasion or other means likely to cause normally law-abiding persons to commit it," Tomlinson, 243 N.W.2d at 554. See Ostrand, 219 N.W.2d at 512.

■ The State agrees evidence of Anderson's relationship with Furman must be established, but only to the point of demonstrating the individual, knowingly or unknowingly, was working with the officers. See Ostrand, 219 N.W.2d at 512 ("to show he was acting for them"). The excluded evidence would tie Furman to Anderson, but it was not so probative on the issue whether Furman was acting for the officers in the final two transactions with defendant as to make its exclusion reversible error. In any event, evidence that the officers used Furman in the last two "buys"

was so overwhelming this ruling could hardly have been prejudicial. Trial court did not abuse its discretion in limiting the cross-examination concerning this collateral transaction not involving the defendant. See Avery v. Harms Implement Co., 270 N.W.2d at 649; State v. Frazer, 267 N.W.2d at 38.

IX. *Did trial court err in overruling objections to questions relating to Furman's statements to Anderson?*

■ During the State's examination of Furman he was questioned about the September 16 cocaine sale in which he participated. He then testified that on September 14 he directed Anderson to drive to defendant's residence in Ames "to find some cocaine."

Furman was asked, "[H]ave you ever made a statement that you have been a dealer for the last five years in the Nevada community?" Defendant objected this was irrelevant and immaterial. He made no objections on the ground of prejudice to the defendant, or hearsay. Trial court overruled the objection. Furman, after his own fifth amendment objection was overruled, answered affirmatively.

The State argues Furman's statement was probative of defendant's intent to profit because it made it more likely Furman and defendant had a business relationship; that if Furman was an established drug dealer he must have known defendant was a source of cocaine. This in turn made it more likely defendant sold cocaine for profit. While this rationale may be tenuous, we hold admission of the statement was not reversible error. If in truth there is no discernible link between Furman's statement and defendant's intent to profit, we fail to see how defendant was prejudiced. Questions of relevancy and materiality of evidence rest within the sound discretion of the court. State v. Johnson, 219 N.W.2d 690, 698 (Iowa 1974). Evidence must be unduly and clearly prejudicial to the defendant for its admission to constitute reversible error. *Id.*

The prosecutor also asked Furman if he had told Anderson, "You should be around because there is so much [cocaine]. You could have had all the coke you wanted last weekend." This was objected to on the grounds it was irrelevant and immaterial, "an attempt to prejudice the Jury with regard to other matters that have absolutely no bearing on the guilt or innocence of Allan Gibb." This objection was overruled. Trial court cautioned the jury it was not to consider this statement for the truth of the matter asserted, or as proof that much cocaine was in fact available. They were directed not to consider the statement as any evidence the defendant "was somehow tied to that previous weekend," and were told it was offered only to show whether the witness made the statement and to show the nature of the relationship between Anderson and the witness.

In view of trial court's careful admonitions to the jury, what we have said concerning the prior statement applies here. We find no reversible error.

X. *Should trial court have directed a verdict on the ground there was no proof the substance delivered was a "narcotic drug?"*

■ Defendant's convictions were for delivery of Schedule II narcotic drugs for profit in violation of section 204.401(1)(a), Code Supp.1977. Section 204.206 lists controlled substances that fall within the "Schedule II" classification; subsection 2 extends the "Schedule II" designation to include "narcotic drugs." Section 204.101(17) relevantly provides:

"*Narcotic drug*" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or a combination of extraction and chemical synthesis:

. . . .

(d) Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances . . . .[1]

Defendant insists the State's proof did not show the substance he sold was a narcotic drug as above defined, and that trial court was wrong in concluding, on the basis of *State v. Monroe*, 236 N.W.2d 24, 32 (Iowa 1975), the substance was Schedule II cocaine.

Defendant relies on the testimony of a forensic expert proffered after the court, on the basis of *Monroe*, sustained objections to the evidence. This expert testified there are two isomers in the substance called cocaine, the "L" isomer and the "D" isomer, both of which satisfy the chemical formula of cocaine ($C_{17}H_{21}NO_4$). There are differences in the molecular arrangements of the two isomers, which result in different physical and chemical reactions. "L" cocaine may be derived from the coca plant or produced synthetically. "D" cocaine may be produced only synthetically.

Upon cross-examination the expert conceded his testimony was solely theoretical, that to his knowledge it had never been possible to isolate the "D" cocaine isomer, and in any event it would be enormously expensive. He did not think it would be possible to synthesize "D" cocaine without producing "L" cocaine also. In the quantities involved in this case there would be only "one chance in a million" it would be "D" cocaine. He personally knew of no one who had ever discovered the presence of "D" cocaine.

Defendant's expert testified theoretically "D" cocaine could be distinguished from "L" cocaine only by additional tests the State concedes it did not perform.

On this record we hold trial court was right in sustaining objections to the proffered testimony and in overruling defendant's motion for directed verdict on this ground. There was no dispute the sub-

1. This subsection was amended by 1980 Session, 68th G.A., ch. 1015, § 24, to add the word "stereoisomer" following the word "isomer."

stance defendant delivered was cocaine as the State's tests showed, regardless of whether it was the "L" isomer or the "one in a million" "D" isomer. The legislature plainly intended to cover both when it included in the section 204.101(17) definition "*any . . . isomer . . . thereof which is chemically equivalent or identical . . . .*" The "isomer" language of the Iowa statute is not included in the federal statute, which is referred to in the decisions relied on by defendant. *See United States v. Hall*, 552 F.2d 273, 274–75 (9th Cir. 1977); *United States v. Orzechowski*, 547 F.2d 978, 980–83 & n.2 (7th Cir. 1976), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). *But see United States v. Rosado-Fernandez*, 614 F.2d 50, 53–54 (5th Cir. 1980); *United States v. Erickson*, 611 F.2d 255, 257 (8th Cir. 1979).

We treat the statute's meaning as a matter of law, not a question for the jury. *Cassady v. Wheeler*, 224 N.W.2d 649, 654 (Iowa 1974). Cocaine is a narcotic drug by reason of the statute, and it is not necessary for the State to prove cocaine is a narcotic as a matter of chemistry. *State v. Heck*, 301 N.W.2d 741, 743 (Iowa 1981). The evidence defendant offered would have generated no fact issue for the jury. Trial court correctly concluded as a matter of law the substance defendant delivered was a Schedule II narcotic drug.

XI. *Should trial court have directed a verdict for defendant on the ground there was no proof of intent to profit?*

Defendant asserts trial court should have granted his motion for directed verdict because there was insufficient evidence of intent to profit as a matter of law, and that the only evidence was circumstantial.

■ Of course, circumstantial evidence now stands on the same footing as direct evidence in testing evidential sufficiency. *State v. Jones*, 289 N.W.2d 597, 600 (Iowa 1980); *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979). The sufficiency of evidence is determined after considering the evidence in the light most favorable to the State. *State v. McDaniel*, 265 N.W.2d at 922.

■ Without further extending this opinion, we hold the evidence in this case, including the quantities of cocaine involved, defendant's conduct in the sales and the prices he charged (viewed in the light of the expert testimony), defendant's access to cocaine in large quantities, the credit he extended to Furman, and his refusal to name his suppliers, was sufficient to take the case to the jury on this issue.

XII. *Did trial court properly instruct the jury on the issue of entrapment?*

■ Although the testimony is unsatisfactory, the jury could have believed Furman's assertions he cajoled defendant, by the use of entreaties based on close personal friendship, to procure the cocaine sold to Anderson. Thus the defense of entrapment was raised in this case.

The entrapment instruction (number 21) submitted by trial court generally followed Iowa State Bar Association Uniform Criminal Jury Instruction 213. But the court was confronted with an additional element that instruction does not address: the law officers' use of a third party (Furman). We considered this factor in *State v. Tomlinson*, 243 N.W.2d at 554, and *State v. Ostrand*, 219 N.W.2d at 512. Pursuant to the rationale of those cases, trial court instructed the jury that entrapment cannot result merely from the inducements of a private individual. But the problem arose in attempting to follow the principal holding in those decisions: that if law officers use an individual to help them arrange the commission of a crime by another person, the officers cannot disclaim inducements offered by such individual in the course of his or her efforts for the officers. Trial court, modifying the uniform instruction, used the following language:

However, if law enforcement officers utilize an individual to help them arrange the commission of a crime *by a particular person to whom the officers direct the individual* the officers cannot disclaim the inducements such individual offers in the course of his efforts for the officers sim-

ply because he was a private citizen or unaware that he was being so utilized. (Emphasis supplied.)

In this case the law officers had no knowledge of this defendant, even after enlisting Furman's aid in procuring cocaine, until the first purchase was made. Thereafter they were concerned with making larger purchases, and the evidence reflects they knew defendant was Furman's source.

This situation was not considered in *Tomlinson* and *Ostrand*, where the law officers knew of the defendants' identities when utilizing the third parties to make the "buys."

Defendant by exception and argument preserved the alleged error in instruction 21. He asserted it required him to generate a jury question on entrapment by some showing that Anderson utilized Furman to make a buy from a particular person (defendant), to whom the officers directed Furman. Defendant contended this instruction was prejudicial, and that it was an erroneous statement of law that unduly restricted the entrapment doctrine. He argued the law officers set Furman in motion to obtain drugs from whomever he could procure them, and that they had to know Furman would be going into the street to buy them from persons they did not know. Consequently, defendant argued, the State could not disclaim the methods Furman employed to obtain the cocaine.

We think defendant's exception should have prevailed, and that instruction 21 contained an erroneous statement of the law insofar as it required, for entrapment, that law enforcement officers utilizing a third party to help them arrange the commission of a crime must direct the third party to a particular target individual. This holding is supported by *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), where the defendant claimed entrapment by the activities of a government informer awaiting sentencing on his own drug conviction. The informer repeatedly requested narcotics from the defendant, claiming he was suffering from withdrawal. Defendant, who was undergoing addiction treat-

ment, obtained drugs, which they shared. Thereafter the informer reported defendant to government agents, who set up the observed sales for which defendant was prosecuted. *Id.* at 371, 78 S.Ct. at 820, 2 L.Ed.2d at 850–51. At trial the government agents professed ignorance of the prior methods by which the informant obtained the drugs from defendant. The *Sherman* Court observed, "The Government cannot make such use of an informer and then claim disassociation through ignorance." *Id.* at 375, 78 S.Ct. at 822, 2 L.Ed.2d at 852. Similarly, when the government stakes a third party with money as a free agent to buy drugs, it cannot disclaim the third party's conduct in the transaction. The likelihood the defendant thus selected by the third party may have been the object of undue pressure that would cause a normally law-abiding person to violate the law is surely as great as the case in which the government directs the third party to a particular individual.

Our conclusion instruction 21 was erroneous in this regard does not end our inquiry. Not all errors in trial, even those of constitutional stature, necessarily dictate a reversal. *See Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967); *State v. King*, 256 N.W.2d 1, 12 (Iowa 1977). An accused is only entitled to a fair trial, not a perfect one. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340, 345 (1972); *State v. Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972). An error in instructing the jury does not necessitate reversal unless it is prejudicial. *See State v. Jacoby*, 260 N.W.2d 828, 836 (Iowa 1977); *State v. Chatterson*, 259 N.W.2d 766, 771 (Iowa 1977).

Turning to the "directed to a specific person" language in the instruction, it is apparent it effectively deprived defendant of his entrapment defense as to count II, based on the first cocaine purchase. But as to counts I and III, grounded on the second and third transactions, the evidence was clear the law officers knew of defendant, knew he was Furman's supplier, and set up Furman to make the purchases from defendant. The jury could not reasonably

have found otherwise, and the instruction's unnecessary language and requirement, under this record, could not have prejudiced defendant. The error thus requires us to reverse and remand for new trial as to count II. We find no reversible error on this ground as to counts I and III.

XIII. *Did trial court abuse its discretion in declining to order defendant's commitment for medical treatment?*

■ At his sentencing hearing defendant requested that he be committed for medical treatment under section 204.409(2) as an abuser of drugs, and he presented evidence on this issue.

After hearing the evidence, trial court found defendant was a chronic abuser of marijuana, but in the exercise of its discretion refused to commit defendant to a treatment facility. The court found that the defendant's prime motivation for a last-minute treatment request was probably the desire to avoid the mandatory sentence, and that defendant's use of drugs was "on again, off again." The court observed that abstinence, supervision, and monitoring could be had in a penal setting as well as in a hospital.

We think trial court could consider the deterrent effect of prompt imprisonment and the treatment available to defendant at a prison facility.

We hold trial court's decision not to commit under section 204.409(2) was not an abuse of discretion. *See State v. Grimme*, 274 N.W.2d 331, 338 (Iowa 1979); *State v. Prothero*, 242 N.W.3d 304, 306 (Iowa 1976); *State v. Horton*, 231 N.W.2d 36, 39 (Iowa 1975).

XIV. *Did trial court abuse its discretion in sentencing defendant to three indeterminate ten-year terms and in ordering two of the terms to be served consecutively?*

Defendant was convicted on each count of the crime of delivering a Schedule II narcotic drug for profit. This is a class "C" felony. § 204.401(1)(a), The Code. A class "C" felon, not an habitual offender, shall be confined for no more than ten years and in addition may be fined not more than five thousand dollars. *Id.* § 902.9. A person sentenced pursuant to section 204.401(1)(a)

or (b) shall not be eligible for parole until he or she has served a minimum period of confinement of one-third of the maximum indeterminate sentence. *Id.* § 204.413.

Defendant was sentenced to be confined for a period not to exceed ten years, and to pay a fine of $1000, on each count. The court further provided the sentences imposed on counts I and II were to be served consecutively.

Count I was based on the third, $9000 cocaine transaction. Count II was grounded on the first, $500 sale. Count III charged the second, $1185 transaction.

Defendant argues trial court abused its discretion in failing to treat the three convictions as one offense for the purpose of sentencing, as permitted by section 204.408, The Code, and in imposing consecutive sentences. He asserts the whole record discloses a judicial preoccupation with deterrence, which resulted in a harsh, impassioned and biased sentence.

■ We have held when a sentence is imposed within statutory limits, it will be set aside only for an abuse of discretion. *State v. Nelson*, 279 N.W.2d 1, 3 (Iowa 1979). Ordinarily an abuse of discretion will be found only where there is no support for the decision in the record. *State v. Noonan*, 246 N.W.2d 236, 237 (Iowa 1976). The trial court, within the limits of applicable statutes, had the discretion to select a sentencing combination that would "provide maximum opportunity for the rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others." § 901.5, The Code.

■ We carefully have examined the record and the statements made by trial court at the sentencing hearing. We find the court did not abuse its discretion in the manner charged by the defendant.

However, a sentencing question arises from our reversal of the conviction and judgment on count II. The sentence on count II was to be served consecutively, not concurrently. The colloquy of trial court from the bench at sentencing discloses the court considered the fact of three convictions in imposing all three sentences. *See*

*State v. Thompson*, 275 N.W.2d 370, 372 (Iowa 1979).

We remand this case for resentencing of the defendant on counts I and III without consideration of a conviction on count II. We do not suggest what the sentence should be as that determination lies in the discretion of the trial court. *See State v. Matlock*, 289 N.W.2d at 630. *State v. Swartz*, 278 N.W.2d 22 (Iowa 1979), describes the conditions under which a sentencing court can consider evidence bearing on another offense.

We affirm defendant's convictions on counts I and III but remand for resentencing as to those counts. We reverse the conviction and judgment on count II and remand for new trial. Costs are taxed two-thirds to the defendant, one-third to the State.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.